UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PASTOR ADEN RUSFELDT, | Case No.: |
| *Plaintiff*, | |
| vs. | **COMPLAINT** |
| CITY OF NEW YORK, NEW YORK; DERMONT SHEA, in his Official Capacity as Commissioner of the City of New York Police Department; KEECHANT SEWELL, in her Official Capacity as Commissioner of the City of New York Police Department; STEPHEN SPATARO, in his Official Capacity as Captain of the City of New York Police Department; and OFFICERS JOHN DOE 1-10, in their Official Capacities as officers of the City of New York Police Department, | |
| *Defendants*. | |

Plaintiff, Pastor Aden Rusfeldt ("Pastor Aden"), by and through his undersigned counsel, brings this Complaint against the above-named Defendants and their successors in office, alleging as follows:

### INTRODUCTION

1.      This case seeks to protect and vindicate Pastor Aden's fundamental constitutional rights, including but not limited to the rights to freedom of speech and religious exercise.  This action is brought under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution and challenges Defendants' acts, policies, practices, procedures, and/or customs that deprived Pastor Aden his right to engage in Christian religious speech and proselytizing in New York City during the New York City Gay Pride Festival (hereinafter, the "Pride Festival") on June 27, 2021.  Unless enjoined, Defendants' acts, policies, practices,

procedures, and/or customs will continue to deprive Pastor Aden of his fundamental constitutional rights at future Pride Festivals.

2.    Pastor Aden seeks a declaration that Defendants violated his constitutional rights as set forth in this Complaint; a preliminary and permanent injunction enjoining the enforcement of Defendants' unconstitutional acts, policies, practices, procedures, and/or customs as set forth in this Complaint; a judgment awarding nominal and compensatory damages against Defendants; and the reasonable costs of litigation, including attorney's fees, costs, and expenses, pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

3.    This action arises under the Constitution and laws of the United States. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

4.    Pastor Aden's claims are authorized by the First, Fourth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this court.

5.    Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Pastor Aden's claims occurred in this district.

## PARTIES

6.    Pastor Aden, an adult citizen of the United States and the Commonwealth of Pennsylvania, is the Pastor of Key of David Christian Center.  Pastor Aden is a Christian evangelist who, based upon his sincerely held religious beliefs, desires peacefully to share and express his Christian faith with others through protected speech and religious activities, including street

preaching and displaying signs, banners, and t-shirts with Christian messages and scripture quotes from the Bible.

7.     Defendant City of New York, New York (the "City") is a corporate body capable of being sued.  The City is responsible for the policies, practices, customs, and procedures of the City of New York Police Department ("NYPD"), for the training and supervision of the employees of the NYPD, including but not limited to Defendants John Doe 1-10, and for those acts committed pursuant to the training, supervision, policies, practices, customs, and procedures of the NYPD that deprived Pastor Aden of his fundamental constitutional rights as set forth in this Complaint.

8.     Defendant Dermont Shea was the Commissioner of the NYPD during the time of the events at issue here and until December 31, 2021.  On information and belief, at all relevant times, Defendant Shea was an agent, servant, and/or employee of the City, acting under color of state law.  At this time, Defendant Shea is sued in his official capacity only.

9.     Defendant Keechant Sewell is the current Commissioner of the NYPD.  At this time, Defendant Sewell is sued in her official capacity only.

10.     Defendant Stephen Spataro is the Commanding Officer of the NYPD 6th Precinct, which includes Greenwich Village.  On information and belief, at all relevant times, Defendant Spataro was an agent, servant, and/or employee of the City, acting under color of state law.  At this time, Defendant Spataro is sued in his official capacity only

11.     Defendants John Doe 1-10 are officers of the NYPD.  On information and belief, at all relevant times, Defendants John Doe 1-10 were agents, servants, and/or employees of the City, acting under color of state law.  On information and belief, Defendants John Doe 1-10, among others, are responsible for the policies, practices, procedures, and/or customs of the NYPD, for the training and supervision of the officers of the NYPD, including the training and supervision of

3

certain of Defendants John Doe 1-10, and for those acts committed pursuant to the training, supervision, policies, practices, customs, and procedures of the NYPD that deprived Pastor Aden of his fundamental constitutional rights as set forth in this Complaint.  At this time, Defendants John Doe 1-10 are sued in their official capacities only.

12.     The policies, practices, procedures, and/or customs of the City, through the NYPD, as enforced and implemented through the actions of its officers, including Defendants John Doe 1-10, and, on information and belief, the failure to adequately supervise and train Defendants John Does 1-10, were each moving forces behind the deprivation of Pastor Aden's fundamental constitutional rights as set forth in this Complaint.

## STATEMENT OF FACTS

13.     The Pride Festival, an event that celebrates the LGBT community, is held in the City on or around the last weekend of June every year.  The event attracts tens of thousands of participants and millions of spectators every year.  The Pride Festival and associated events have occurred, in one form or fashion, since 1970.  On information and belief, it will continue to occur in the future on an annual basis, including but not limited to June 2022.

14.     On June 27, 2021, certain roads in Greenwich Village were closed to vehicular traffic due to the Pride Festival, including but not limited to Washington Square East between West 4th Street and Washington Place at the southeast corner of Washington Park.

15.     Although Washington Square East between West 4th Street and Washington Place was closed to vehicular traffic, it was not closed to pedestrian traffic, and the sidewalks along Washington Square East were not closed or restricted in any way.

16.     The sidewalks along Washington Square East between West 4th Street and Washington Place are a traditional public forum.

17.   Pastor Aden sincerely holds the religious belief that LGBT lifestyles and behaviors are immoral and antithetical to the will of God.  He also sincerely holds the religious belief that God has called him to denounce LGBT lifestyles and behaviors through preaching to turn those who practice these lifestyles and behaviors away from them and to God.  Pastor Aden preaches at many public venues, including parades, college campuses, concerts, and other public fora.  Pastor Aden recognizes that some people might take offense to his message; however, he wishes to share a religious message about what he believes are the eternal consequences of practicing LGBT lifestyles and behaviors.

18.   Prior to June 27, 2021, Pastor Aden emailed a letter to various officials with the City and NYPD informing them that he and other members of Key of David Christian Center would be preaching during the Pride Festival.  The letter provided Pastor Aden's contact information and invited its recipients to reach out to discuss the issue if they had any concerns. No one from the City or the NYPD contacted Pastor Aden or anyone else associated with Key of David Christian Center.

19.   On June 27, 2021, Pastor Aden, along with three other members of Key of David Christian Center, went to the southeast sidewalk on Washington Square East between West 4th Street and Washington Place for the purpose of preaching their religious message to attendees of the Pride Festival.

20.   Pastor Aden and the other members of his group were wearing clothes that had religious messages printed on them, and Pastor Aden was holding a banner that had religious messages printed on it.

21.   Pastor Aden and his group positioned themselves on the sidewalk with their backs to the buildings that run along the sidewalk so that the sidewalk was not blocked.  Pastor Aden and

his group were lawfully positioned in a place that was open to the public.  At no time did Pastor

Aden or his group block or impede traffic on any public sidewalk or other public right-of-way.

22.     At approximately 4:15 p.m., Pastor Aden and his group began to preach their

religious message to Pride Festival participants.

23.     Pastor Aden specifically chose the time and place noted above because he knew the

Pride Festival would attract people who he believed needed to hear the religious message that he

and his group would be conveying.   At the time Pastor Aden and his group began preaching, there

were festivalgoers in the immediate area.

24.     By speaking their religious message, wearing clothing containing their religious

message, and holding a banner containing their religious message, Pastor Aden and his group were

engaging in activities protected by the First Amendment to the United States Constitution and

other laws.

25.     Pastor Aden and his group expressed their religious message—through their

clothing, banner, and speech—in a peaceful manner at all times.

26.     At the time Pastor Aden and his group began preaching their religious message, a

group of approximately five NYPD officers[1] were located on the northwest sidewalk of

Washington Square East, directly across Washington Square East from where Pastor Aden and his

group were located.

27.     Soon after Pastor Aden and his group began preaching, a group of participants in

the Pride Festival who objected to their message began forming a small crowd around Pastor Aden

---

[1] At this time, Pastor Aden does not know the names of the NYPD officers involved in the incidents
set forth in this Complaint.  The officers referenced herein are Defendants John Doe 1-10.

and his group, heckling, yelling obscenities, throwing bottles of water and alcohol at them, and gradually moving closer to them.

28.     Despite the fact that approximately five NYPD officers were located just across the street and were able to see the disturbance that the crowd of hecklers was creating, the officers did not initially move from their location or make any attempt to keep the small crowd of hecklers away from Pastor Aden and his group.

29.     Approximately 10-15 minutes after Pastor Aden and his group began preaching, as the group of hecklers grew larger, the NYPD officers who were across Washington Park East came over to the side of the street where Pastor Aden and his group were located.

30.     Rather than direct the crowd of hecklers to disperse, however—or even to address the crowd in any way—the officers instructed Pastor Aden and his group to "shut it down."

31.     Pastor Aden politely informed the officers that he had the right to speak on a public sidewalk, and he asked the officers if he could speak with their Sergeant.  The officers informed Pastor Aden that they would get their Sergeant, and they instructed Pastor Aden, in the interim, to lower his banner.  Pastor Aden agreed that the group would stop preaching for the time being, but he politely refused to lower his banner.

32.     One officer stated that the officers were asking Pastor Aden and his group to leave—rather than directing the crowd to disperse—because Pastor Aden and his group were "more cordial" than the crowd.  Pastor Aden politely and respectfully informed the officer that he and his group had the right to be on the sidewalk, and they did not leave.

33.     Rather than direct the crowd to disperse, the officers positioned themselves between Pastor Aden and his group and the crowd, which was still heckling, yelling obscenities, and engaging in obscene chants.

34.     Approximately 10 minutes after Pastor Aden asked to speak with the Sergeant, an officer who claimed to be the Sergeant arrived on the scene.  Pastor Aden informed the Sergeant that he and his group simply sought peacefully to convey their religious message.

35.     Approximately 5-10 minutes later, an officer who identified himself as Captain Turner (first name unknown) arrived on the scene and asked Pastor Aden and his group to leave. Pastor Aden again politely refused.

36.     Shortly speaking with Captain Turner, Pastor Aden and his group resumed their preaching.  The crowd continued heckling, yelling obscenities, and chanting at Pastor Aden and his group.  Officers eventually brought in barricades to separate the crowd from Pastor Aden and his group.  Again, the officers did not direct the crowd to disperse.

37.     Approximately 1 hour and 10 minutes after Pastor Aden and his group began preaching, officers informed Pastor Aden that he and his group would be arrested if they did not leave the area.  The officers also demanded that Pastor Aden lower his banner.

38.     On information and belief, the officers who directed Pastor Aden and his group to leave the area and take down the banner did so pursuant to the direction of another Captain, whose name is unknown, after that Captain had consulted with, on information and belief, officers from the NYPD legal department, who were also on the scene.

39.     On information and belief, the decisions of the Captain and/or officers from the NYPD legal department with whom he consulted were decisions of those with authority to make final governmental policy.

40.     At the direction of the Captain, Pastor Aden and his group began to gather their belongings, lower their banner, and leave the area.  As this happened, the crowd of Pride Festival hecklers began to cheer.

41.     The Captain directed Pastor Aden and his group to walk northeast on the sidewalk on Washington Square East and take a right (east) on the sidewalk on Washington Place.  Pastor Aden and his group began walking in that direction, escorted by the Captain and other officers. As they were walking, the Captain stated to Pastor Aden, "[u]nfortunately, we are required by law to protect you."

42.     After Pastor Aden and his group made the right turn onto Washington Place, the Captain again directed them to leave the area.  By that time, the crowd of hecklers that had gathered had significantly dissipated.

43.     Pastor Aden politely declined to continue walking, and officers placed him and his group in handcuffs, arrested them, and led them to a van in which they transported them to jail. Pastor Aden and his group were jailed for approximately 2½ hours.

44.     Pastor Aden was charged with two counts of Disorderly Conduct under New York Penal Law § 240.20(6) and (7).

45.     The charges against Pastor Aden were later dismissed.

46.     On information and belief, officers could have caused the crowd to disperse at any time had they attempted to do so.

47.     On information and belief, at no time did NYPD officers instruct the crowd of hecklers that had gathered to disperse.

48.     On information and belief, NYPD officers could have controlled the crowd of hecklers without arresting Pastor Aden and his group.

49.     On information and belief, NYPD officers did not arrest a single member of the crowd of hecklers for their unlawful actions taken against Pastor Aden and his group, including but not limited to their violations of New York Penal Law § 240.20.

50.     By threatening to arrest Pastor Aden—and by actually arresting Pastor Aden—based on the actions of the crowd of Pride Festival hecklers, Defendants engaged in content-based and viewpoint-based censorship of Pastor Aden's speech and in religious discrimination against him.

51.     Pastor Aden wishes to return to the Pride Festival next year and in future years to engage in similar speech and religious activity.  Pastor Aden, however, reasonably fears that Defendants will again refuse to perform their constitutional duties to protect him and his speech and religious activity from the Pride Festival hecklers, thereby supporting the mob's intent to suppress his speech and religion, and to refrain from unlawfully arresting him based on his speech and religious exercise.

52.     Consequently, Pastor Aden fears returning to the Pride Festival absent a court order enjoining Defendants from continuing their pattern of illegal and unconstitutional conduct.  In this way, Pastor Aden's exercise of his speech and religious activity is being chilled by the actions of the City, through the NYPD.

53.     On information and belief, the NYPD officers' actions at issue here—including but not limited to not intervening when the crowd was forming, not directing the crowd to disperse, not placing additional physical barriers between the crowd and Pastor Aden and his group, directing Pastor Aden and his group to disperse without intending to arrest them, directing Pastor Aden and his group to disperse or be arrested, and arresting Pastor Aden and his group (the "NYPD Conduct")—were decisions that were made pursuant to official policy of the City, through the NYPD.

54.     On information and belief, the NYPD Conduct is a practice, tacitly endorsed by the City, that was and is so persistent or widespread as to constitute a custom or usage with the force of law.

55.     On information and belief, Defendants, failed to adequately train and supervise NYPD officers, including but not limited to Defendants John Doe 1-10, concerning their constitutional duty not to ratify and effect a literal heckler's veto or support a violent mob intent on suppressing speech, including but limited to training and supervision with respect to intervening when a crowd is forming, directing a crowd to disperse, placing physical barriers between a crowd and speakers, directing speakers to disperse without intending to arrest them, directing speakers to disperse or be arrested, and arresting speakers.

56.     On information and belief, Defendants knew to a moral certainty that its officers would confront the situation involving a heckler's veto, that the situation would either present officers with a difficult choice of the sort that training or supervision will make less difficult or there is a history of officers mishandling the situation, and the wrong choice by the officers will frequently cause a deprivation of a citizen's constitutional rights.

57.     On information and belief, Defendants' failure to train and supervise amounts to a deliberate indifference to the rights of persons with whom officers, including but limited to Defendants John Doe 1-10, would come into contact, and Defendants disregarded a known or obvious consequence of their actions.

58.     On information and belief, Defendants had actual or constructive knowledge that this omission in training and supervision causes NYPD officers to violate citizens' constitutional rights, and, after having received notice of this deficiency in training and supervision and its

adverse impact on the constitutional rights of citizens within their jurisdiction, Defendants adopted a policy of inaction by failing to cure the known deficiency.

59.     On information and belief, well-trained and well-supervised officers would not have violated Pastor Aden's constitutional rights.

60.     Through its policies, customs or usages, and failures to train and/or supervise, Defendants caused the constitutional violations set forth herein.

**FIRST CLAIM FOR RELIEF**
**(Freedom of Speech—First Amendment)**

61.     Pastor Aden hereby incorporates by reference all allegations of this Complaint as if alleged verbatim herein.

62.     Pastor Aden's speech and expressive activities as alleged herein constitute free speech protected by the Free Speech Clause of the First Amendment to the United States Constitution.

63.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs created, adopted, and enforced under color of state law, Defendants have deprived Pastor Aden of his right to freedom of speech in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

64.     By directing Pastor Aden to leave the Pride Festival, by threatening to arrest and cite him, by arresting and citing him, and by failing to direct their law enforcement powers toward the crowd of hecklers, Defendants violated the First Amendment.

65.     By effecting a heckler's veto, Defendants' actions were content- and viewpoint-based in violation of the First Amendment.  Defendants have no compelling or legitimate reason

that can justify their censorship of Pastor Aden's speech and Defendants' actions were not narrowly tailored in furtherance of any such reason.

66.    Defendants' heckler's veto policy and practice and its enforcement against Pastor Aden as set forth in this Complaint violated Pastor Aden's right to freedom of speech protected by the First Amendment.

67.    Defendants' acts, policies, practices, procedures, and/or customs, and the enforcement thereof, as alleged herein, are unlawful in at least the following ways:

a.    They are unconstitutionally vague in that they fail to define their prohibitions with sufficient definiteness that ordinary people can understand what conduct is prohibited and describe the offense in a manner that encourages arbitrary and discriminatory enforcement;

b.    They are unconstitutionally overbroad in that they regulate substantially more speech than is constitutionally permissible;

c.    They singled out Pastor Aden's speech for discriminatory treatment;

d.    They restrain constitutionally-protected speech in advance of its expression, without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policy;

e.    They barred Pastor Aden's free speech in a traditional public forum without adequate justification;

f.    They create a content-based and viewpoint-based heckler's veto that silenced Pastor Aden's expression due to hostile audiences;

g.    They fail to achieve any legitimate government purpose, lack narrow tailoring, and fail to leave open alternative avenues for expression; and

13

h.      They are constitutionally unreasonable.

68.     Defendants had a constitutional duty not to ratify and effectuate a heckler's veto nor join a mob intent on suppressing Pastor Aden's speech. Instead, Defendants were required to take reasonable action to protect Pastor Aden from violence while exercising his constitutional rights. By failing to do so, Defendants violated Pastor Aden's rights protected by the First Amendment.

69.     Pastor Aden was engaged in constitutionally protected speech, Defendants' actions were motivated or substantially caused by Pastor Aden's exercise of his constitutional rights, Defendants acted with a retaliatory intent or motive, and Defendants' actions chilled Pastor Aden's expression and would have been likely to chill a person of ordinary firmness from further speech.

70.     As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Pastor Aden has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief, nominal and compensatory damages, and attorney's fees, costs, and expenses.

**SECOND CLAIM FOR RELIEF**
**(Free Exercise of Religion—First Amendment)**

71.     Pastor Aden hereby incorporates by reference all allegations of this Complaint as if alleged verbatim herein.

72.     Pastor Aden's activities as alleged herein constitute the exercise of religion protected by the Free Exercise Clause of the First Amendment to the United States Constitution.

73.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs created, adopted, and enforced under color of state law, Defendants have substantially burdened Pastor Aden's religious exercise and deprived him of his right to religious exercise in violation of the Free Exercise Clause of the First Amendment as applied to the states and their

political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

74.    Defendants targeted Pastor Aden for selective and disfavored treatment because of his religious activity in violation of the Free Exercise Clause of the First Amendment.

75.    Defendants' actions against Pastor Aden were designed to persecute or oppress his religion and religious practices, which Defendants disfavor, in violation of the Free Exercise Clause of the First Amendment.

76.    Defendants had a constitutional duty not to target Pastor Aden for selective and disfavored treatment because of Pastor Aden's religious activity.  By doing so, Defendants violated Pastor Aden's rights protected by the First Amendment.

77.    As a direct and proximate result of Defendants' violation of the Free Exercise Clause of the First Amendment, Pastor Aden has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief, nominal and compensatory damages, and attorney's fees, costs, and expenses.

**THIRD CLAIM FOR RELIEF**
**(Unreasonable Seizure—Fourth Amendment)**

75.    Pastor Aden hereby incorporates by reference all allegations of this Complaint as if alleged verbatim herein.

76.    The Fourth Amendment prohibits unreasonable searches and seizures, including but not limited to unlawful seizures, arrests, detainment, imprisonment, and confinement of persons.

77.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs created, adopted, and enforced under color of state law, Defendants have deprived Pastor Aden of his rights under the Fourth Amendment to the United States Constitution as applied to the

states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

78.    Defendants intended to arrest and confine Pastor Aden.

79.    Pastor Aden was conscious of the arrest and confinement.

80.    Pastor Aden did not consent to the arrest and confinement.

81.    Defendants did not have probable cause to arrest and confine Pastor Aden and his arrest and confinement was not otherwise privileged.

82.    As a direct and proximate result of Defendants' violation of the Fourth Amendment, Pastor Aden has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief, nominal and compensatory damages, and attorney's fees, costs, and expense

## FOURTH CLAIM FOR RELIEF
### (Equal Protection—Fourteenth Amendment)

83.    Pastor Aden hereby incorporates by reference all allegations of this Complaint as if alleged verbatim herein.

84.    The Equal Protection Clause of the Fourteenth Amendment requires Defendants to treat similarly situated persons alike.

85.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs created, adopted, and enforced under color of state law, Defendants have deprived Pastor Aden of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

86.    By granting use of a public forum to people whose views Defendants find acceptable but denying use to those expressing less favored or more controversial views, such as

those expressed by Pastor Aden, Defendants have violated the Equal Protection Clause of the Fourteenth Amendment.

87.     Defendants' heckler's veto policy and practice as applied against Pastor Aden's free speech and religious activity as alleged above violated the Equal Protection Clause of the Fourteenth Amendment.

88.     By directing Pastor Aden to leave the Pride Festival, threatening to cite and arrest him, and arresting and citating him for engaging in speech and religious activity as alleged above, all of which was based on the adverse reaction of Pride Festival hecklers, Defendants violated the Equal Protection Clause of the Fourteenth Amendment by denying Pastor Aden access to a public forum to engage in speech and religious activities that Defendants disfavor while permitting Pride Festival hecklers to use the forum to engage in a counter-protest that included committing unlawful acts, thereby denying the use of this forum to those whose expressive activities Defendants find unacceptable.

89.     By directing Pastor Aden to leave the Pride Festival, threatening to cite and arrest him, and arresting and citating him for engaging in speech and religious activity as alleged above, all of which was based on the adverse reaction of Pride Festival hecklers, Defendants violated the Equal Protection Clause of the Fourteenth Amendment because Defendants chose to take adverse action against Pastor Aden due to invidious discrimination against him.

90.     In addition, Defendants singled out Pastor Aden because of his message and did not arrest any of the Pride Festival hecklers who were committing unlawful acts. Defendants' actions were discriminatory against Pastor Aden and others similarly situated.

91.     Defendants chose to selectively enforce the criminal laws as set forth herein out of an arbitrary desire to discriminate against Pastor Aden based on his speech and religion in violation of the Equal Protection Clause of the Fourteenth Amendment.

92.     As a direct and proximate result of Defendants' violation of the Equal Protection Clause, Pastor Aden has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief, nominal and compensatory damages, and attorney's fees, costs, and expenses.

**FIFTH CLAIM FOR RELIEF**
**(Due Process—Fourteenth Amendment)**

93.     Pastor Aden hereby incorporates by reference all allegations of this Complaint as if alleged verbatim herein.

94.     The Due Process Clause of the Fourteenth Amendment prohibits the regulation of speech and religious exercise in a manner that fails to define the prohibitions at issue with sufficient definiteness that ordinary people can understand what conduct is prohibited and describes the offense in a manner that encourages arbitrary and discriminatory enforcement.

95.     The Due Process Clause of the Fourteenth Amendment also prohibits the regulation of speech and religious exercise in a manner that sweeps a substantial amount of constitutionally protected expression within its ambit.

96.     New York Penal Law § 240.20, including but not limited to sections (6) and (7), is unconstitutionally vague and overbroad on its face in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

97.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Pastor

Aden of due process of the law guaranteed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

98.     The law and prohibitions at issue here burden speech without any clear or precise standards subject to objective measurement or application, but instead are given meaning only through the exercise of unbridled discretion by those responsible for the enforcement of the acts and present practices of Defendants complained of herein.

99.     Individuals of common intelligence must guess as to whether their expression will be of the type prohibited by the law and prohibitions at issue here.

100.    The law and prohibitions at issue here are vague and allow for unbridled discretion in determining which speech is prohibited and which speech is allowed, which Defendants exercise at their whim.

101.    Defendants' acts, policies, practices, procedures, and/or customs are unconstitutionally vague and overbroad as applied in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

102.    As a direct and proximate result of Defendants' violations of the Due Process Clause, Pastor Aden has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief, nominal and compensatory damages, and attorney's fees, costs, and expenses.

### PRAYER FOR RELIEF

**WHEREFORE**, Pastor Aden asks this Court:

A) to declare that Defendants violated his fundamental constitutional rights as set forth in this Complaint;

B) to preliminarily and permanently enjoin Defendants' heckler's veto policy and practice and its application to his speech and religious activities as set forth in this Complaint;

C) to declare that NY Penal Law § 240.20, including but not limited to sections (6) and (7), is unconstitutionally vague and overbroad on its face;

D) to declare that NY Penal Law § 240.20, including but not limited to sections (6) and (7), is unconstitutionally vague and overbroad as applied to the facts at issue here;

E) to award him nominal and compensatory damages;

F) to award him his reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988;

G) to grant such other and further relief as this Court should find just and proper.


Dated: January 21, 2022                                  Respectfully submitted,

                                                         /s/ Harmeet Dhillon
                                                         Harmeet K. Dhillon
                                                         Ronald D. Coleman
                                                         DHILLON LAW GROUP INC.
                                                         177 Post Street, Suite 700
                                                         San Francisco, CA 94108
                                                         (415) 433-1700

                                                         Josh Dixon*
                                                         CENTER FOR AMERICAN LIBERTY
                                                         1311 Main Street, Suite 302
                                                         Mount Airy, MD 21770

                                                         *Counsel for Plaintiff Pastor Aden Rusfeldt*

                                                         *Motion for Admission Pro Hac Vice*
                                                         forthcoming