UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PASTOR ADEN RUSFELDT,

*Plaintiff*,

vs.

CITY OF NEW YORK, NEW YORK;
KEECHANT SEWELL, in her Official
Capacity as Commissioner of the City of New
York Police Department; and STEPHEN
HUGHES, in his Individual Capacity,

*Defendants*.

Case No.: 22-CV-594 (PKC)

**FIRST AMENDED COMPLAINT**

Plaintiff, Pastor Aden Rusfeldt ("Pastor Aden"), by and through his undersigned counsel,

brings this First Amended Complaint[1] against the above-named Defendants and their successors

in office, alleging as follows:

## INTRODUCTION

1.      This case seeks to protect and vindicate Pastor Aden's fundamental constitutional

rights, including but not limited to the rights to protest, to speak freely, and to exercise his religion.

This action is brought under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments

to the United States Constitution and challenges Defendants' acts, policies, practices, procedures,

and/or customs that deprived Pastor Aden his right to engage in Christian religious speech in New

York City during the NYC Pride Festival (hereinafter, the "Pride Festival") on June 27, 2021.

Unless enjoined, Defendants' acts, policies, practices, procedures, and/or customs will continue to

---

[1] Counsel for the City has consented, in writing, to the filing of this First Amended Complaint
pursuant to Rule 15(a)(2).

deprive Pastor Aden of his fundamental constitutional rights at future Pride Festivals and related events.

2.      Pastor Aden seeks a declaration that Defendants violated his constitutional rights as set forth in this Complaint; a preliminary and permanent injunction enjoining the enforcement of Defendants' unconstitutional acts, policies, practices, procedures, and/or customs as set forth in this Complaint; a judgment awarding nominal, compensatory, and punitive damages against Defendants; and the reasonable costs of litigation, including attorney's fees, costs, and expenses, pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

3.      This action arises under the Constitution and laws of the United States.  This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      Pastor Aden's claims are authorized by the First, Fourth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this court.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Pastor Aden's claims occurred in this district.

## PARTIES

6.      Pastor Aden, an adult citizen of the United States and the Commonwealth of Pennsylvania, is the Pastor of Key of David Christian Center. Pastor Aden is a Christian evangelist who, based upon his sincerely held religious beliefs, desires peacefully to share and express his Christian faith with others through protected speech and religious activities, including street

preaching and displaying signs, banners, and t-shirts with Christian messages and scripture quotes from the Bible.

7.      Defendant City of New York, New York (the "City") is a corporate body capable of being sued.  The City is responsible for the policies, practices, customs, and procedures of the City of New York Police Department ("NYPD"), for the training and supervision of the employees of the NYPD, and for those acts committed pursuant to the policies, practices, customs, procedures, usages, training, and supervision of the NYPD that deprived Pastor Aden of his fundamental constitutional rights as set forth in this Complaint.

8.      Defendant Keechant Sewell is the Commissioner of the NYPD.  Defendant Sewell is sued in her official capacity only.

9.      At the time of the events in question in this lawsuit, Defendant Stephen Hughes was an Assistant Chief of the NYPD. On information and belief, at all relevant times, Assistant Chief Hughes was an agent, servant, and/or employee of the City, acting under color of state law. Assistant Chief Hughes is sued in his individual capacity.

10.     The policies, practices, customs, procedures, and/or usages of the City, through the NYPD, as enforced and implemented through the actions of its officers, including but not limited to Assistant Chief Hughes, and, as set forth below, the failure to adequately train and supervise the officers on the scene at issue in this litigation, were each moving forces behind the deprivation of Pastor Aden's fundamental constitutional rights as set forth in this Complaint.

## STATEMENT OF FACTS

### Pastor Aden Protests at the Pride Festival and is Arrested

11.     The Pride Festival, an NYC Pride event that celebrates the LGBT community, is held in the City on or around the last weekend of June every year.  NYC Pride attracts tens of

thousands of participants and millions of spectators every year. The Pride Festival and associated events have occurred, in one form or fashion, since 1970. On information and belief, it will continue to occur in the future on an annual basis.

12.     The 2021 Pride Festival occurred on June 27, 2021.

13.     Due to the Pride Festival, certain roads in Greenwich Village were closed to vehicular traffic. The sidewalks along Washington Square East and Washington Place were not closed or restricted in any way.

14.     The sidewalks along Washington Square East and Washington Place are located in the NYPD's 6th Precinct.

15.     Pastor Aden sincerely holds the religious belief that LGBT lifestyles and behaviors are immoral and antithetical to the will of God. He also sincerely holds the religious belief that God has called him to denounce LGBT lifestyles and behaviors through protest and speech in an effort to turn those who practice these lifestyles and behaviors away from them. Pastor Aden protests and speaks at many public venues, including parades, college campuses, concerts, and other public fora. Pastor Aden recognizes that some people will take offense to his message; however, he wishes to share a religious message about what he believes are the eternal consequences of practicing LGBT lifestyles and behaviors.

16.     On June 26, 2021, Pastor Aden emailed a letter to various City officials informing them that he and other members of Key of David Christian Center would be protesting and speaking in the 6th Precinct during the Pride Festival. The letter provided Pastor Aden's contact information and invited its recipients to reach out to discuss the issue if they had any concerns. No one from the City or the NYPD contacted Pastor Aden or anyone else associated with Key of David Christian Center.

17.     On June 27, 2021, Pastor Aden, along with three other members of Key of David Christian Center, went to the southeast sidewalk on Washington Square East between West 4th Street and Washington Place for the purpose of protesting the Pride Festival and conveying a religious message to Pride Festival attendees.

18.     The sidewalks along Washington Square East and Washington Place where Pastor Aden and his group were located are a traditional public forum.

19.     Pastor Aden and the other members of his group were wearing clothes that had religious messages printed on them, and Pastor Aden was holding a banner that had religious messages printed on it. The messages were graphic. Specifically, Pastor Aden's shirt read, "Attention:  Feminists Submit to your Husbands" on the front, and "Women Belong in the Kitchen" on the back.  Pastor Aden's banner read, "Obey Jesus" on the front, and "Fags and Whores Burn in Hell.  Repent, Obey Jesus" on the back.

20.     Pastor Aden and his group positioned themselves on the sidewalk with their backs to the buildings that run along the sidewalk so that the sidewalk was not blocked.  Pastor Aden and his group were lawfully positioned in a place that was open to the public.  At no time did Pastor Aden or his group block or impede traffic on any public sidewalk or other public right-of-way, and they were peaceful at all times.

21.     At approximately 4:15 p.m., a member of Pastor Aden's group began to speak a religious message to Pride Festival participants. Like Pastor Aden's clothing and banner, the message was graphic. It included statements like "You are ugly in the sight of God," "God is angry at you," "I am not tolerant because Jesus was not tolerant," and "The blood of Christ is not HIV positive."

22.     Pastor Aden specifically chose the time and place noted above because he knew the Pride Festival would attract people who he believed needed to hear the religious message that he would be conveying.   At the time the member of Pastor Aden's group began speaking, there were festivalgoers in the immediate area.

23.     By speaking a religious message, wearing clothing containing a religious message, and holding a banner containing a religious message, Pastor Aden and the members of his group were engaging in activities protected by the First Amendment to the United States Constitution and other laws.

24.     Pastor Aden and the members of his group were peaceful at all relevant times.

25.     At the time the member of Pastor Aden's group began speaking to the festivalgoers, a group of approximately five NYPD officers[2] were located on the northwest sidewalk of Washington Square East, directly across Washington Square East from where Pastor Aden and his group were located.

26.     Soon after the member of Pastor Aden's group began speaking to the festivalgoers, a group of participants in the Pride Festival who objected to the group's message began forming a small crowd around Pastor Aden and his group, heckling, yelling obscenities, throwing bottles of water and alcohol at them, and gradually moving closer to them.

27.     Despite the fact that approximately five NYPD officers were located just across the street and were able to see the disturbance that the crowd of hecklers was creating, the officers did not initially move from their location or make any attempt to keep the small crowd of hecklers away from Pastor Aden and his group.

---

[2] At this time, Pastor Aden does not know the names of all the NYPD officers involved in the incidents set forth in this Complaint.

28.     Approximately 10-15 minutes after the member of Pastor Aden's group began speaking to the festivalgoers, as the group of hecklers grew larger, the NYPD officers who were across Washington Park East came over to the side of the street where Pastor Aden and his group were located.

29.     Rather than direct the crowd of hecklers to disperse—or even to address the crowd in any way—the officers directed Pastor Aden and his group to "shut it down" and to leave the Pride Festival due to actions of the hostile crowd.

30.     Pastor Aden politely informed the officers that he had the right to engage in expressive activity on a public sidewalk, and he asked the officers if he could speak with their Sergeant.  The officers informed Pastor Aden that they would get their Sergeant, and they instructed Pastor Aden, in the interim, to lower his banner.  The member of the group who was speaking to the festivalgoers stopped speaking, but Pastor Aden politely refused to lower his sign or to leave the Pride Festival.

31.     One officer stated that the officers were asking Pastor Aden and his group to leave the Pride Festival—rather than directing the crowd to disperse—because Pastor Aden and his group were "more cordial" than the crowd.  Pastor Aden politely and respectfully informed the officer that he and his group had the right to be on the sidewalk and to engage in speech-related activities, and they did not leave.

32.     Rather than direct the crowd to disperse, the officers positioned themselves between Pastor Aden and his group and the crowd, which was still heckling, yelling obscenities, and engaging in obscene chants.

33.     Approximately 10 minutes after Pastor Aden asked to speak with the Sergeant, NYPD Sergeant Thomas McDermont arrived on the scene.  Pastor Aden informed Sergeant

McDermont that he and his group simply sought peacefully to convey their religious message. Sergeant McDermont did not direct Pastor Aden or his group to stop speaking or to leave the Pride Festival.

34.     Approximately 5-10 minutes later, NYPD Captain Mark Turner arrived on the scene and directed Pastor Aden and his group to leave the Pride Festival. Pastor Aden again politely refused.

35.     Shortly after speaking with Captain Turner, the member of Pastor Aden's group who was speaking a religious message resumed speaking, which included reading passages from the Bible aloud.  The crowd continued heckling, yelling obscenities, and chanting at Pastor Aden and his group.  Officers eventually brought in barricades to separate the crowd from Pastor Aden and his group.  Again, the officers did not direct the crowd to disperse or otherwise take law enforcement action against the crowd.

36.     Approximately 1 hour and 10 minutes after the member of Pastor Aden's group began speaking, Assistant Chief Hughes arrived on the scene.  Assistant Chief Hughes ordered his subordinate officers to direct Pastor Aden and his group to leave the Pride Festival and to take down the banner and to inform them that they would be arrested if they refused to comply, which the officers did.  The member of the group who was speaking to the crowd of festivalgoers stopped speaking and the rest of the group began to gather their belongings.  One of the subordinate officers informed Pastor Aden that he was not permitted to go to a nearby alternate location.

37.     As the group was gathering their belongings, Assistant Chief Hughes directed Pastor Aden to "take the sign down." At Assistant Chief Hughes' direction, Pastor Aden lowered his banner.  As this happened, the crowd of Pride Festival hecklers started to cheer.

38.     As Pastor Aden and his group were leaving, Assistant Chief Hughes asked Pastor Aden where he and his group were going. Assistant Chief Hughes then directed Pastor Aden and his group to walk "toward Broadway." When Pastor Aden informed Assistant Chief Hughes he did not know where Broadway was, Assistant Chief Hughes ordered Pastor Aden to walk northeast on the sidewalk on Washington Square East and take a right (east) on the sidewalk on Washington Place and "keep walking," away from the Pride Festival.

39.     Pastor Aden and his group began walking in that direction, escorted by Assistant Chief Hughes and other officers.  By that time, the crowd of hecklers that had gathered around Pastor Aden had significantly dissipated.  As they were walking, Assistant Chief Hughes stated to Pastor Aden, "[u]nfortunately, we are required by law to protect you."

40.     After Pastor Aden and his group made a right turn onto Washington Place, Pastor Aden politely declined to continue walking. Despite the fact the crowd of hecklers had significantly dissipated, Assistant Chief Hughes informed Pastor Aden that the crowd was a "dangerous condition." Assistant Chief Hughes referenced the message on Pastor Aden's banner as contributing to the "dangerous condition" created by the hostile crowd.

41.     Assistant Chief Hughes ordered his subordinate officers to again direct Pastor Aden and his group to leave the Pride Festival, instructing the officers to arrest Pastor Aden and his group if they did not comply.  When the officers again instructed Pastor Aden to leave the Pride Festival, he again politely refused.  Pursuant to Assistant Chief Hughes' instructions, the officers placed Pastor Aden and his group in handcuffs, arrested them, and led them to a van in which they were transported to jail. Pastor Aden and his group were jailed for approximately 2½ hours.

42.     NYPD officers directed Pastor Aden to leave the Pride Festival, threatened to arrest him, and arrested him because of the crowd of hecklers that had gathered around them.

43.     Pastor Aden was charged with two counts of Disorderly Conduct under New York Penal Law § 240.20(6) and (7).

44.     The charges against Pastor Aden were later dismissed.

45.     At no time did any NYPD officer instruct the crowd of hecklers that had gathered around Pastor Aden and his group to disperse or to stop their hostilities.

46.     At no time did any NYPD officer detain or arrest a single member of the crowd of hecklers for their unlawful actions taken against Pastor Aden and his group, including but not limited to the crowd's violations of New York Penal Law § 240.20.

47.     The NYPD could have controlled the crowd of hecklers by ordering them to disperse or otherwise directing their law enforcement powers against them without directing Pastor Aden and his group to leave the Pride Festival, threatening to arrest them, or arresting them.

48.     By directing Pastor Aden to leave the Pride Festival, threatening to arrest him, and arresting him based on the actions of the hostile crowd rather than ordering the crowd to disperse or taking other law enforcement actions against the crowd, Defendants engaged in content-based and viewpoint-based censorship of Pastor Aden's speech and in religious discrimination against him.

**The City Acted Pursuant to a Policy, Custom, or Usage**

49.     Through its *de facto* policies, customs or usages, and failures to train and/or supervise, Defendants caused the constitutional violations set forth herein.

50.     The City has a persistent and widespread pattern and practice of failing to ensure the NYPD respects the First Amendment and other constitutional rights of protesters during lawful protests.

51.     In December 2020—just seven months prior to Pastor Aden's arrest here—the City Department of Investigation issued a report (the "Investigation Report") finding that the City has routinely failed to ensure NYPD policing practices conform with constitutional restrictions during protest activity. The Investigation Report focused primarily on the racial justice protests during the summer of 2020 and highlighted a persistent and widespread pattern and practice by the NYPD of unconstitutional conduct, including but not limited to insufficiently protecting individuals' First Amendment rights.  A true and correct copy of the Investigation Report is attached hereto as Exhibit A.

52.     As the Investigation Report noted, the NYPD "does *not* have a [written] policy specific to policing protests of First Amendment-protected expression." Investigation Report at 35 (emphasis added); *see also id.* at 68 (recommending that the NYPD "draft a Patrol Guide policy specific to policing protests and protected First Amendment activity"). Moreover, the written policies the NYPD does have "fail to distinguish [events involving] issue-driven First Amendment expression from other types of events." *Id.*

53.     In this case, the City has candidly admitted that the NYPD does *not* have a written policy that is designed to guide officers' behavior and protect individuals' First Amendment rights in the situation involving a "heckler's veto." (Defs' Opp'n to Pl's Mot. for Prelim. Injunc. (ECF 28) at 10 (quoting Declaration of Sgt. Patrick McGuire, dated April 23, 2022 (ECF 29-2), ¶ 7).)

54.     The Investigation Report concluded that the NYPD's "primary strategy" in responding to protest activity "involve[s] application of disorder control tactics and methods" that do not adequately take account of the fact that First Amendment-protected activity is involved. Investigation Report at 35. Indeed, the NYPD lacks a "mindset and a strategy of facilitating First Amendment expression to the greatest extent possible consistent with public safety." *Id.*

55.     Earlier this year, the City's Citizen Complaint Review Board ("CCRB") also issued a report regarding unconstitutional policing practices by the NYPD during the 2020 racial justice protests (the "CCRB Report"). Similar to the Investigation Report, the CCRB Report found regular "abuse and infringement of First Amendment rights by members of the NYPD." A true and correct copy of the CCRB Report is attached hereto as Exhibit B.[3]

56.     The violations of Pastor Aden's constitutional rights here were occasioned pursuant to practices, tacitly endorsed by the City, that impermissibly elevated police control over individuals' First Amendment rights, and that were and are so persistent or widespread as to constitute a *de facto* policy, custom, or usage with the force of law.

57.     In addition, the City failed to adequately train and supervise its officers, including but not limited to Assistant Chief Hughes and the other officers on the scene, concerning their constitutional duty not to discriminate against individuals' First Amendment protected activity.

58.     The Investigation Report found that the NYPD "deployed a large number of front-line supervisors and officers to police . . . protests without adequate training," including but not limited to training focused on "facilitating [the exercise of individuals'] First Amendment rights." Investigation Report at 62–63 (emphasis added). This "inadequate training raises concerns that officers lack the tools to make the necessary discretionary or tactical judgments during protests." *Id.* at 62.

59.     The CCRB Report contained a series of recommended reforms that the NYPD should adopt to end its long-standing pattern and practice of failing to respect individuals' First

---

[3] Because of the size of CCRB Report, Pastor Aden is attaching only the main body of the document. The full document, including all appendices, is available online at https://www.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/issue_based/2020NYCProtestReport.pdf, last visited on March 16, 2023.

Amendment rights, including "updated and routine training on the proper use of crowd control tactics during large scale events."

60.    The City knew to a moral certainty that its officers would confront the situation involving a protest at NYC Pride and a hostile crowd's reaction to that protest, that the situation would present officers with a difficult choice of the sort that training or supervision will make less difficult, and that the wrong choice by the officers will frequently cause a deprivation of a citizen's constitutional rights. Indeed, by virtue of the email Pastor Aden sent on June 26, 2021, the City either knew or should have known that Pastor Aden would be protesting in the 6th Precinct the next day.

61.    NYPD officers violated Pastor Aden's constitutional rights in numerous ways and on numerous occasions throughout the events of June 27, 2021—including but not limited to directing him to disperse based on the actions of a hostile crowd, threatening him with arrest based on the actions of a hostile crowd, requiring him to take his sign down based on the actions of a hostile crowd, arresting him based on the actions of a hostile crowd, failing to direct the hostile crowd to disperse, and failing to take other law enforcement action against the hostile crowd— facts that demonstrate an obvious need for more or better training and supervision with respect to these issues to protect against the constitutional violations alleged herein.

62.    Indeed, far from adequately training and supervising its officers regarding these issues, the City, by its own admission, does not even have a written policy that is designed to guide officers' behavior and protect individuals' First Amendment rights in the situation involving a "heckler's veto."

63.    The City's failure to train and supervise its officers amounts to a deliberate indifference to the rights of persons with whom officers would come into contact, and Defendants

disregarded a known or obvious consequence of their actions. Defendants had at least constructive knowledge that this omission in training and supervision causes NYPD officers to violate citizens' constitutional rights, and, after having received notice of this deficiency in training and supervision and its adverse impact on the constitutional rights of citizens within their jurisdiction, Defendants adopted a policy of inaction by failing to cure the known deficiency.

64.     Well-trained and well-supervised officers would not have violated Pastor Aden's constitutional rights but would, instead, have taken law enforcement action against the hostile crowd that had formed around him.

65.     Defendants' violations of federal law as set forth herein were intentional, were motivated by evil motive or intent, and involved reckless or callous indifference to Pastor Aden's federally protected rights.

### Pastor Aden's Future Plans

66.     Pastor Aden regularly speaks in protest at events that celebrate LGBT ways of life. At these events, he regularly wears clothing with messages that are identical to or substantially similar to the clothing he wore at the 2021 Pride Festival, carries a banner with messages that are identical or substantially similar to the banner he carried at the 2021 Pride Festival, and speaks a substantially similar message to the one given by the other member of his group at the 2021 Pride Festival.

67.     Pastor Aden wishes to return to NYC Pride events, including the Pride Festival, this year and in future years to engage in identical or substantially similar speech and religious activity as he did at the 2021 Pride Festival.  At these future events, Pastor Aden intends to wear clothing with messages that are identical to or substantially similar to the clothing he wore at the 2021 Pride Festival, carry a banner with messages that are identical or substantially similar to the banner he

carried at the 2021 Pride Festival, and speak a substantially similar message to the one given at the 2021 Pride Festival.

68.     Based on Pastor Aden's experience at the 2021 Pride Festival and through his experience engaging in similar protest activity at similar LGBT events, it is a virtual certainty that he will be met with extreme hostility from the crowd at these future events, just as he was at the 2021 Pride Festival.  Pastor Aden reasonably fears that Defendants will again refuse to perform their constitutional duties to protect him and his speech and religious activity from hecklers, thereby supporting the mob's intent to suppress his speech and religion, and to refrain from unlawfully arresting him based on his speech and religious exercise.

69.     Consequently, Pastor Aden reasonably fears returning to NYC Pride events, including the Pride Festival, absent a court order enjoining Defendants from continuing their pattern of illegal and unconstitutional conduct.

**FIRST CLAIM FOR RELIEF**
**(Freedom of Speech—First Amendment)**

70.     Pastor Aden hereby incorporates by reference all allegations of this Complaint as if alleged verbatim herein.

71.     Pastor Aden's speech and expressive activities as alleged herein constitute free speech protected by the Free Speech Clause of the First Amendment to the United States Constitution.

72.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs created, adopted, and enforced under color of state law, Defendants have deprived Pastor Aden of his right to freedom of speech in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

73.     By directing Pastor Aden to leave the Pride Festival, by threatening to arrest and cite him, by requiring him to take his sign down, by arresting and citing him, and by failing to direct their law enforcement powers toward the crowd of hecklers, Defendants violated the First Amendment.

74.     By effecting a heckler's veto, Defendants' actions were content- and viewpoint-based in violation of the First Amendment.  Defendants have no compelling or legitimate reason that can justify their censorship of Pastor Aden's speech, Defendants' actions were not narrowly tailored in furtherance of any such reason, and Defendants' instructions to Pastor Aden to take his sign down and leave the Pride Festival foreclosed adequate alternate channels of communication.

75.     Defendants' acts, policies, practices, procedures, and/or customs, and the enforcement thereof, as alleged herein, violated Pastor Aden's right to freedom of speech protected by the First Amendment.

76.     Defendants' acts, policies, practices, procedures, and/or customs, and the enforcement thereof, as alleged herein, are unlawful in at least the following ways:

    a.     They are unconstitutionally vague in that they fail to define their prohibitions with sufficient definiteness that ordinary people can understand what conduct is prohibited and describe the offense in a manner that encourages arbitrary and discriminatory enforcement;

    b.     They are unconstitutionally overbroad in that they regulate substantially more speech than is constitutionally permissible;

    c.     They singled out Pastor Aden's speech for discriminatory treatment;

d.    They restrain constitutionally-protected speech in advance of its expression, without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policy;

e.    They barred Pastor Aden's free speech in a traditional public forum without adequate justification;

f.    They create a content-based and viewpoint-based heckler's veto that silenced Pastor Aden's expression due to hostile audiences;

g.    They fail to achieve any legitimate government purpose, lack narrow tailoring, and fail to leave open adequate alternative avenues for expression; and

h.    They are constitutionally unreasonable.

77.    Defendants had a constitutional duty not to ratify and effectuate a heckler's veto nor join a mob intent on suppressing Pastor Aden's speech. Instead, Defendants were required to take reasonable action to protect Pastor Aden from violence while exercising his constitutional rights. By failing to do so, Defendants violated Pastor Aden's rights protected by the First Amendment.

78.    Pastor Aden was engaged in constitutionally protected speech, Defendants' actions were motivated or substantially caused by Pastor Aden's exercise of his constitutional rights, Defendants acted with a retaliatory intent or motive, and Defendants' actions chilled Pastor Aden's expression and would have been likely to chill a person of ordinary firmness from further speech.

79.    As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Pastor Aden has suffered irreparable harm, including the loss of his

fundamental constitutional rights, entitling him to declaratory and injunctive relief, nominal and compensatory damages, and attorney's fees, costs, and expenses.

## SECOND CLAIM FOR RELIEF
### (Free Exercise of Religion—First Amendment)

80.     Pastor Aden hereby incorporates by reference all allegations of this Complaint as if alleged verbatim herein.

81.     Pastor Aden's activities as alleged herein constitute the exercise of religion protected by the Free Exercise Clause of the First Amendment to the United States Constitution.

82.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs created, adopted, and enforced under color of state law, Defendants have substantially burdened Pastor Aden's religious exercise and deprived him of his right to religious exercise in violation of the Free Exercise Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

83.     Defendants targeted Pastor Aden for selective and disfavored treatment because of his religious activity in violation of the Free Exercise Clause of the First Amendment.

84.     Defendants' actions against Pastor Aden were designed to persecute or oppress his religion and religious practices, which Defendants disfavor, in violation of the Free Exercise Clause of the First Amendment.

85.     Defendants had a constitutional duty not to target Pastor Aden for selective and disfavored treatment because of Pastor Aden's religious activity.  By doing so, Defendants violated Pastor Aden's rights protected by the First Amendment.

86.     As a direct and proximate result of Defendants' violation of the Free Exercise Clause of the First Amendment, Pastor Aden has suffered irreparable harm, including the loss of

his fundamental constitutional rights, entitling him to declaratory and injunctive relief, nominal and compensatory damages, and attorney's fees, costs, and expenses.

## THIRD CLAIM FOR RELIEF
### (Unreasonable Seizure—Fourth Amendment)

75.     Pastor Aden hereby incorporates by reference all allegations of this Complaint as if alleged verbatim herein.

76.     The Fourth Amendment prohibits unreasonable searches and seizures, including but not limited to unlawful seizures, arrests, detainment, imprisonment, and confinement of persons.

77.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs created, adopted, and enforced under color of state law, Defendants have deprived Pastor Aden of his rights under the Fourth Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

78.     Defendants intended to arrest and confine Pastor Aden.

79.     Pastor Aden was conscious of the arrest and confinement.

80.     Pastor Aden did not consent to the arrest and confinement.

81.     Defendants did not have probable cause to arrest and confine Pastor Aden and his arrest and confinement was not otherwise privileged.

82.     As a direct and proximate result of Defendants' violation of the Fourth Amendment, Pastor Aden has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief, nominal and compensatory damages, and attorney's fees, costs, and expenses.

## FOURTH CLAIM FOR RELIEF

**(Equal Protection—Fourteenth Amendment)**

83.　Pastor Aden hereby incorporates by reference all allegations of this Complaint as if alleged verbatim herein.

84.　The Equal Protection Clause of the Fourteenth Amendment requires Defendants to treat similarly situated persons alike.

85.　By reason of the aforementioned acts, policies, practices, procedures, and/or customs created, adopted, and enforced under color of state law, Defendants have deprived Pastor Aden of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

86.　By granting use of a public forum to people whose views Defendants find acceptable but denying use to those expressing less favored or more controversial views, such as those expressed by Pastor Aden, Defendants have violated the Equal Protection Clause of the Fourteenth Amendment.

87.　Defendants' heckler's veto practices as applied against Pastor Aden's free speech and religious activity as alleged above violated the Equal Protection Clause of the Fourteenth Amendment.

88.　By directing Pastor Aden to leave the Pride Festival, threatening to cite and arrest him, and arresting and citing him for engaging in speech and religious activity as alleged above, all of which was based on the adverse reaction of Pride Festival hecklers, Defendants violated the Equal Protection Clause of the Fourteenth Amendment by denying Pastor Aden access to a public forum to engage in speech and religious activities that Defendants disfavor while permitting Pride Festival hecklers to use the forum to engage in a counter-protest that included committing unlawful

acts, thereby denying the use of this forum to those whose expressive activities Defendants find unacceptable.

89.     By directing Pastor Aden to leave the Pride Festival, threatening to cite and arrest him, and arresting and citing him for engaging in speech and religious activity as alleged above, all of which was based on the adverse reaction of Pride Festival hecklers, Defendants violated the Equal Protection Clause of the Fourteenth Amendment because Defendants chose to take adverse action against Pastor Aden due to invidious discrimination against him.

90.     In addition, Defendants singled out Pastor Aden because of his message and did not arrest any of the Pride Festival hecklers who were committing unlawful acts. Defendants' actions were discriminatory against Pastor Aden and others similarly situated.

91.     Defendants chose to selectively enforce the criminal laws as set forth herein out of an arbitrary desire to discriminate against Pastor Aden based on his speech and religion in violation of the Equal Protection Clause of the Fourteenth Amendment.

92.     As a direct and proximate result of Defendants' violation of the Equal Protection Clause, Pastor Aden has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory relief, nominal and compensatory damages, and attorney's fees, costs, and expenses.

## FIFTH CLAIM FOR RELIEF
### (Due Process—Fourteenth Amendment)

93.     Pastor Aden hereby incorporates by reference all allegations of this Complaint as if alleged verbatim herein.

94.     The Due Process Clause of the Fourteenth Amendment prohibits the regulation of speech and religious exercise in a manner that fails to define the prohibitions at issue with sufficient

definiteness that ordinary people can understand what conduct is prohibited and describes the offense in a manner that encourages arbitrary and discriminatory enforcement.

95.     The Due Process Clause of the Fourteenth Amendment also prohibits the regulation of speech and religious exercise in a manner that sweeps a substantial amount of constitutionally protected expression within its ambit.

96.     New York Penal Law § 240.20, including but not limited to sections (6) and (7), is unconstitutionally vague and overbroad on its face in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

97.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Pastor Aden of due process of the law guaranteed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

98.     The law and prohibitions at issue here burden speech without any clear or precise standards subject to objective measurement or application, but instead are given meaning only through the exercise of unbridled discretion by those responsible for the enforcement of the acts and present practices of Defendants complained of herein.

99.     Individuals of common intelligence must guess as to whether their expression will be of the type prohibited by the law and prohibitions at issue here.

100.     The law and prohibitions at issue here are vague and allow for unbridled discretion in determining which speech is prohibited and which speech is allowed, which Defendants exercise at their whim.

101.   Defendants' acts, policies, practices, procedures, and/or customs are unconstitutionally vague and overbroad as applied in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

102.   As a direct and proximate result of Defendants' violations of the Due Process Clause, Pastor Aden has suffered irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief, nominal and compensatory damages, and attorney's fees, costs, and expenses.

## PRAYER FOR RELIEF

**WHEREFORE**, Pastor Aden asks this Court:

A) to declare that Defendants violated his fundamental constitutional rights as set forth in this Complaint;

B) to preliminarily and permanently enjoin Defendants' heckler's veto practices and their application to his speech and religious activities as set forth in this Complaint;

C) to declare that NY Penal Law § 240.20, including but not limited to sections (6) and (7), is unconstitutionally vague and overbroad on its face;

D) to declare that NY Penal Law § 240.20, including but not limited to sections (6) and (7), is unconstitutionally vague and overbroad as applied to the facts at issue here;

E) to award him nominal, compensatory, and punitive damages;

F) to award him his reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988;

G) to grant such other and further relief as this Court should find just and proper.


Dated: March 16, 2023                                 Respectfully submitted,

/s/ Harmeet Dhillon
Harmeet K. Dhillon
Ronald D. Coleman
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
(415) 433-1700

Josh Dixon
Eric Sell
CENTER FOR AMERICAN LIBERTY
1311 Main Street, Suite 302
Mount Airy, MD 21770

*Counsel for Plaintiff Pastor Aden Rusfeldt*