

**CENTER FOR AMERICAN LIBERTY**

July 7, 2025

**VIA ECF**

Hon. P. Kevin Castel, U.S.D.J.
United States District Court
Southern District of New York
Courtroom 11D
500 Pearl Street
New York, NY 10007-1312

Re: Pre-Motion Letter regarding Rule 50 / 59 Motion
*Rusfeldt v. City of New York, New York, et al.*, Case No. 22-cv-00594-PKC

Dear Judge Castel,

[Handwritten note: *No pre-motion letter was required because the Rule 50 and 59 motions are exempted under Individual Practices at 3.A.(i)(k). Plaintiff may either stand on the letter (ECF 164) or file a formal motion by July 16. The balance of the schedule is approved. SO ORDERED. [signature] USDJ 7-8-25*]

It was a pleasure appearing before you at the recent trial in this matter. On behalf of Plaintiff Pastor Aden Rusfeldt, I seek to file a renewed motion for judgment as a matter of law under Rule 50 or, in the alternative, a motion for a new trial under Rule 59. There are no conferences currently scheduled in this case. For the reasons set forth below, the Court should grant Pastor Aden judgment as a matter of law or, in the alternative, a new trial.

**Rule 50**

The Court should grant Pastor Aden judgment as a matter of law on both his claims—Fourth Amendment false arrest and First Amendment heckler's veto.

Fourth Amendment False Arrest

The Court should grant Pastor Aden judgment as a matter of law on his Fourth Amendment false arrest claim because he established the elements of this claim and Defendants failed to establish the existence of probable cause. Specifically, Defendants failed to establish that the orders to disperse the NYPD gave to Pastor Aden were "lawful."

Under Rule 50, the Court should grant a party judgment as a matter of law when "the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in [his] favor." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998). Judgment as a matter of law is appropriate where either (1) "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or (2) "there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [him]." *Id.* (alterations in original). Both circumstances are present here.

1

**CENTER FOR AMERICAN LIBERTY**
1311 S. MAIN STREET, SUITE 207 | MT. AIRY, MD 21771 | (703) 687-6200
JDIXON@LIBERTYCENTER.ORG | WWW.LIBERTYCENTER.ORG



As the Court charged the jury, the elements of a Fourth Amendment claim for false arrest are: (1) the defendant acted under color or law; (2) the defendant intentionally or recklessly violated the plaintiff's rights to be free of arrest without probable cause; and (3) proximate cause. *See* Trial Tr. Vol. 3 at 371:5–23, 373:11–18. While the plaintiff generally bears the burden of proof on these elements, the defendant bears the burden of demonstrating the arrest is supported by probable cause. *See* Trial Tr. Vol. 3 at 374:3–8.

Here, the Court charged the jury on probable cause under one statute: NYPL § 240.20(6), Disorderly Conduct – Failure to Disperse. The Court instructed the jury that the elements of this offense are: (1) the defendant gave the plaintiff a lawful order to disperse; (2) the plaintiff refused that order; and (3) the plaintiff acted with intent to cause, or was reckless to, public inconvenience, annoyance, or alarm, all while plaintiff was gathered with three or more other people. *See* Trial Tr. Vol. 3 at 374:20–375:19. The Court also instructed the jury that "[a]n order to disperse is lawful if its purpose is to promote public order and was not issued in a purely arbitrary manner. *An order that is motivated by an intent to suppress or discriminate against a particular viewpoint is not a lawful order.*" Trial Tr. Vol. 3 at 375:13–17 (emphasis added).

On the record here, no reasonable jury could have found for Defendants. As for the elements on which Pastor Aden bore the burden of proof, first, the Court instructed the jury that Chief Hughes acted under color of law. *See* Trial Tr. Vol. 3 at 372:1–6. Second, Chief Hughes testified that he authorized his subordinates to arrest Pastor Aden, *see* Trial Tr. Vol. 2 at 253:12–13, and the Court charged the jury that there was no dispute that Pastor Aden was arrested by NYPD officers at the direction of Chief Hughes, *see* Trial Tr. Vol. 3 at 373:16–18. Third, Pastor Aden's arrest plainly was the proximate cause of his injuries.

Moreover, Defendants failed to satisfy their burden of demonstrating that probable cause existed for Disorderly Conduct – Failure to Disperse. Specifically, no reasonable jury could find that the dispersal orders the NYPD gave to Pastor Aden were lawful because Defendants failed to demonstrate that those orders were not "motivated by an intent to suppress or discriminate against a particular viewpoint." Trial Tr. Vol. 3 at 375:15–16.

As the Supreme Court has held, regulating speech because it is offensive to others constitutes viewpoint discrimination. *See Matal v. Tam*, 582 U.S. 218, 366 (2017) ("Giving offense is a viewpoint."); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."); *see also Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 31 (2d Cir. 2018) (noting that regulating speech because it is "offensive" constitutes "viewpoint discrimination"). Accordingly, when the police direct their law-enforcement powers against a person because of acts taken by others who are offended by his speech—*i.e.*, a heckler's veto—this constitutes viewpoint discrimination. *See Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 248 (6th Cir. 2015) (en banc) ("The heckler's veto is . . . viewpoint discrimination."); *Rosenbaum v. City and County of San Francisco*, No. 00-15147, 8 Fed. Appx.

2



687, 692 n. 1 (9th Cir. Apr.19, 2001) ("If the city is employing a 'heckler's veto,' then it is discriminating on the basis of viewpoint, because the hecklers' complaints to the police are alleged to be on the basis of viewpoint."); *Jankowski v. City of Duluth*, No. 11–3392, 2011 WL 7656906 (D. Minn. Dec. 20, 2011) ("The prohibition of hecklers' vetoes is, in essence, the First Amendment protection against government effectuating a complaining citizen's viewpoint discrimination." (quoting *Frye v. Kansas City Mo. Police Dept.*, 375 F.3d 785, 793 (8th Cir. 2004) (Bye, J., dissenting on other grounds))); *see also Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 134–35 (1992) (noting that "[l]isteners' reaction to speech is not a content-neutral basis for regulation" and holding unconstitutional ordinance that required "[t]hose wishing to express views unpopular with bottle throwers . . . to pay more for [their parade] permit").

Here, the evidence establishes that Defendants' various orders to Pastor Aden to disperse were based on the actions of the hostile crowd that formed around him in reaction to his speech, thus rendering those orders unlawful. First, there is no dispute over the fact that the crowd gathered around Pastor Aden and his group, began throwing bottles at them, and otherwise posed a threat to them because people in the crowd were offended by—and hostile to—the words on Pastor Aden's sign (along with his companion's spoken words). While the video of the incident is sufficient to demonstrate this fact, the trial testimony confirms it. *See* Trial Tr. Vol. 2 at 175:6–176:4, 200:10–25, 230:3–6, 247:4–10. Second, there is no dispute that the various dispersal orders Defendants gave Pastor Aden were based on the crowd's actions and not anything Pastor Aden or his companions themselves had done. Specifically, the dispersal orders were based on: (1) the crowd throwing bottles at—and otherwise threatening to harm—Pastor Aden's group; (2) the crowd blocking traffic; and (3) Pastor Aden's pole. *See* Trial Tr. Vol. 2 at 176:5–176:14, 177:7–21, 184:8–14, 232:23–233:6, 239:7–13, 239:21–24, 247:7–20. But *Pastor Aden* didn't throw any bottles; *Pastor Aden* didn't block traffic; and Pastor Aden's pole only became a law-enforcement concern *when the crowd had gathered around him*. *See* Trial Tr. Vol. 2 at 174:23–25, 231:6–19, 236:1–18. Accordingly, Defendants' law enforcement action against Pastor Aden was based on the hostile crowd's reaction to his speech. Phrased in the language of the Court's jury charge, the evidence conclusively establishes that Defendants were "motivated by an intent to suppress . . . [Pastor Aden's] viewpoint" because of the hostile crowd's reaction to it. Trial Tr. Vol. 3 at 375:15–16.

Because Defendants' orders to Pastor Aden were based on the actions of the hostile crowd, Defendants must demonstrate that their actions satisfied strict scrutiny—that is, that they were "narrowly tailored" to "promote a compelling Government interest" by the "least restrictive means." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000) (cleaned up); *see also Slattery v. Hochul*, 61 F.4th 278, 289 (2d Cir. 2023). Defendants cannot satisfy that burden.

Pastor Aden does not dispute that maintaining public order is a compelling government interest in the abstract. But Defendants have not come close to satisfying their burden of demonstrating that their actions toward Pastor Aden were either necessary or the least restrictive

3



means available to them. First, Defendants have not demonstrated that controlling the crowd was impossible with the resources they had available to them. As the video of the incident demonstrates, once NYPD officers intervened by placing themselves—and, later, barricades—between the hostile crowd and Pastor Aden's group, the crowd stopped throwing bottles. With NYPD officers and the barricades so located, Defendants neutralized the ongoing threat of physical violence from the crowd. Moreover, Washington Square East was closed to through traffic—and a parade later marched down that street—so the fact that the crowd was in Washington Square East had no impact on public order. Indeed, Chief Hughes testified that "people [were] allowed to be in the road on Washington Place East." Trial Tr. Vol. 2 at 244:7–9. And while the crowd also overflowed into West 4th Street, cars, ambulances, NYPD vehicles, FDNY vehicles, and even a large bus were able to drive down West 4th Street throughout the duration of the incident. *See, e.g.*, Px A1 at 18:32, 19:08, 19:31, 32:05, 32:30, 32:53, and 34:50; Px A2 at 2:06, 3:23, 3:42, 4:33, 4:36, 6:06, 6:11, 6:17, 6:20, 6:26, 6:29, 6:47, 9:09, 9:13, 9:21, 11:08, 12:23, 12:58, 13:57, 16:58, 18:12, 18:28, 18:58, 19:49, 19:59, 22:42, 24:12, 27:11, 27:20, 27:36, 28:45, 28:52, 28:54, 28:57, 29:07, 30:13, 32:04, 32:07, 33:13, 33:23, 34:52, and 36:30; Px A3 at 0:13, 1:46. 2:27, and 2:36. Defendants utterly failed to demonstrate that they were unable to keep people out of West 4th Street, which they could easily have done by, for example, stationing a handful of the hundreds of additional nearby officers there. *See* Trial Tr. Vol. 2 at 217:10–11 (Chief Hughes testifying that there were 400 police officers in the 6th Precinct around the time of the events in question). Instead of utilizing all available resources to ensure public order while protecting Pastor Aden's constitutional rights, Defendants chose to silence him as an "expedient alternative to containing . . . the lawless behavior" of the crowd." *Bible Believers*, 805 F.3d at 252; *see also Meinecke v. City of Seattle*, 99 F.4th 514, 525 (9th Cir. 2024) (noting that to restrict speech based on the actions of a hostile crowd, the government must set forth "concrete proof . . . to establish that restricting [the plaintiff's] speech was the *only way* to avoid violence" (emphasis added)). This was impermissible.

Second, even if the situation were so dire that dispersing the crowd was the only option available to restore public order (and it was not), to Defendants did not take the least restrictive means available to them. To do so, Defendants were required to direct their law-enforcement powers against the hostile crowd—the people who were engaging in unlawful acts—before directing those powers against Pastor Aden, or, if that was not possible, to give a general dispersal order to *everyone* on the scene—*i.e.*, Pastor Aden and his companions *and* the crowd of hecklers. *Bible Believers*, 805 F.3d at 243 (noting that "[t]he police may go against the hecklers . . . or attempt to disperse the *entire crowd* if that becomes necessary" (emphasis added)); *Meinecke*, 99 F.4th at 525 ("Curtailing speech based on the listeners' reaction is rarely—if ever—the least restrictive means to achieve the government's interest in safety."); *Deferio v. City of Syracuse*, 306 F. Supp. 3d 492, 512 (N.D.N.Y. 2018) (noting that "police officers may not—as a first reaction in the name of safety—punish a person's protected speech"). Indeed, Chief Hughes admitted that the NYPD's normal practice in the case of an unlawful assembly is to issue a general dispersal order to *everyone* that is a part of that assembly. Trial Tr. Vol. 2 at 226:4–9. Yet throughout the entire incident, Defendants never once ordered the crowd to disperse, nor did they give a general dispersal order despite the fact the Strategic Response Group had a Long-Range Acoustical Device

4

CENTER FOR AMERICAN LIBERTY

only three blocks away. *See* Trial Tr. Vol. 2 at 237:14–16, 238:9–20. Instead, Defendants impermissibly directed their law-enforcement powers at Pastor Aden as a way of controlling the crowd. *See* Trial Tr. Vol. 2 at 233:17–21 (Chief Hughes admitting his goal was to move Pastor Aden "as opposed to moving 200 people out of the way"). Because Defendants focused their law-enforcement efforts on Pastor Aden as a way of restoring the public order that was disturbed by the hostile crowd, they cannot satisfy strict scrutiny. *Meinecke*, 99 F.4th at 524–25; *Bible Believers*, 805 F.3d at 252; *Deferio*, 306 F. Supp. 3d at 512; *see also McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (noting that, even under intermediate scrutiny, the government may not take "the path of least resistance" at the expense of speech).

Rather than follow the Court's instructions, it appears that the jury was swayed by the offensive nature of Pastor Aden's speech and Defendants' efforts to portray Pastor Aden as a miscreant who simply wanted to get a rise out of Pride attendees. But this was not an incitement case—Pastor Aden did not engage in any "advocacy" that would have warranted an incitement charge, *Hess v. Indiana*, 414 U.S. 105, 108 (1973), nor did Defendants request such a charge—and Pastor Aden's speech would have been protected even if that had been his intent (which he obviously disputes). Defendants' evidence and argument, combined with the offensive nature of Pastor Aden's speech, convinced the jury to abandon its role as factfinder and adopt the role of regulator and censorship board, both of which transcend the role of the jury. In short, the jury was entitled to hate Pastor Aden, but it was not entitled to ignore the evidence.

This case is indistinguishable from *Bible Believers*. There, the plaintiffs, a group of Christian evangelists, attended a festival that celebrated Dearborn, Michigan's Arab population. 805 F.3d at 238. At the festival, the plaintiffs engaged in speech about Islam that many festivalgoers found offensive. *Id.* at 239–41. A group of festivalgoers responded by throwing things at the plaintiffs, and a police officer on the scene did not intervene other than to remove one heckler. *Id.* Later, as the crowd became more hostile, an officer told the plaintiffs that their group—and not the crowd of hecklers—was "a danger to public safety" and that, because the police did not have the manpower to keep them safe, they would be arrested unless they left the festival. *Id.* at 240–41. Despite this fact, the Court concluded that the officers did not use the "[least] restrictive means" available to them because the officers directed their law enforcement efforts against the plaintiffs and not the hostile crowd. *Id.* at 255; *see also Meinecke*, 99 F.4th at 522–26 (concluding similar with respect to Seattle Pride event); *Deferio*, 306 F. Supp. 3d at 512 (concluding similar with respect to Central New York Pride event).

In sum, Pastor Aden established the elements of his Fourth Amendment false arrest claim, and Defendants failed to establish that the orders to disperse that they gave him were "lawful." Accordingly, the Court should grant Pastor Aden judgment as a matter of law on his Fourth Amendment false arrest claim.

CENTER FOR AMERICAN LIBERTY
1311 S. MAIN STREET, SUITE 207 | MT. AIRY, MD 21771 | (703) 687-6200
JDIXON@LIBERTYCENTER.ORG | WWW.LIBERTYCENTER.ORG



First Amendment Heckler's Veto

The Court should grant Pastor Aden judgment as a matter of law on his First Amendment heckler's veto claim for similar reasons.

On Pastor Aden's First Amendment claim, the Court charged four elements: (1) Pastor Aden was engaging in speech protected by the First Amendment; (2) defendant Hughes or another officer of the NYPD, acting under the color of state law, intentionally or recklessly arrested him; (3) Pastor Aden was arrested by defendant Hughes or another officer of the NYPD either (a) without probable cause and with a motive to retaliate against him because of his protected speech; or (b) under circumstances where officers typically exercise their discretion not to make an arrest even if they have probable cause but defendant Hughes or another officer did so because of plaintiff's protected speech; and (4) the acts of defendant Hughes or another officer proximately caused plaintiff's damages. *See* Trial Tr. Vol 3 at 376:18–377:14.

On the record here, no reasonable jury could have found for Defendants. First, the Court instructed the jury that Pastor Aden was engaging in speech protected by the First Amendment. *See* Trial Tr. Vol. 3 at 377:18–20. Second, the Court instructed that Defendants were acting under color of law, and Defendants intentionally arrested Pastor Aden. *See* Trial Tr. Vol. 3 at 378:5–8. Third, for the same reasons as discussed in the First Amendment context, Defendants both lacked probable cause to arrest Pastor Aden and were motivated by their desire to restore the breach of the peace caused by the hostile crowd's reaction to Pastor Aden's speech. Fourth, Defendants proximately caused Pastor Aden damages by arresting him.

While Pastor Aden bore the burden of proving the absence of probable cause under his First Amendment heckler's veto claim, the record conclusively establishes that Defendants did not have probable cause to him regardless of who had the burden of proof

Accordingly, the Court should grant Pastor Aden judgment as a matter of law on his First Amendment heckler's veto claim.

## Rule 59

In the alternative, the Court should grant Pastor Aden a new trial. Rule 59 authorizes the Court to grant a new trial for "any reason for which a new trail has heretofore been granted in an action at law in federal court." Pastor Aden is entitled to a new trial for two reasons: the jury verdict was against the weight of the evidence and the jury charge gave a misleading impression and inadequately explained the law.

6



**1**

The Court may grant a new trial under Rule 59 when "the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133–34 (2d Cir. 1998) (cleaned up). This standard is significantly more lenient than the standard under Rule 50. *Id.* For one thing, the Court may grant a new trial under Rule 59 "even if there is substantial evidence supporting the jury's verdict." *Id.* For another thing, under Rule 59, the Court is "free to weigh the evidence," and it "need not view [the evidence] in the light most favorable to the verdict winner." *Id.*; *see also Song v. Ives Lab'ys, Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992) (same).

Here, even if Pastor Aden were not entitled to judgment as a matter of law under Rule 50 (and he is), for all the same reasons as set forth above in the Rule 50 discussion, the jury's verdict is manifestly against the weight of the evidence on both his Fourth Amendment and First Amendment claims. The weight of the evidence establishes that the crowd gathered and became violent based, in part, on Pastor Aden's speech and that Defendants took law-enforcement action against Pastor Aden based on the actions of the hostile crowd, not anything Pastor Aden himself did. Instead of basing its decision on the facts, the jury was improperly swayed by the offensive nature of Pastor Aden's speech and Defendants' efforts to portray him as a "carnival barker" whose only goal was to create a disturbance. The Court should therefore grant him a new trial.

**2**

The Court may also grant a new trial under Rule 59 if "the jury instructions gave a misleading impression or inadequate understanding of the law." *Plagianos v. Am. Airlines, Inc.*, 912 F.2d 57, 59 (2d Cir. 1990). A new trial is appropriate where the charge "may have confused the jury" and caused them to hold the plaintiff to a more stringent standard than legally required. *Id.*; *see also Ashley v. N.Y.C.*, 992 F.3d 128, 143 (2d Cir. 2021) (similar); *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 148 (2d Cir. 2010) (similar); *Cweklinsky v. Mobil Chem. Co.*, 364 F.3d 68, 72 (2d Cir. 2004). Applying this standard, the Court's jury charge warrants granting Pastor Aden a new trial for three reasons.

First, the Court's jury charge on whether an order to disperse is "lawful" was incomplete and highly confusing. As noted, that charge stated that "[a]n order that is motivated by an intent to suppress or discriminate against a particular viewpoint is not a lawful order." Trial Tr. Vol. 3 at 375:15–16. While this charge was technically not incorrect, it was incomplete and confusing insofar as it did not specify that a dispersal order is necessarily motivated by an intent to suppress or discriminate against a particular viewpoint if it is motivated by officers' desire to restore the public safety that was disturbed by a crowd's hostile reaction to the plaintiff's speech. *Meinecke*, 99 F.4th at 522–24; *Bible Believers*, 805 F.3d at 243; *Deferio*, 306 F. Supp. 3d at 512. Indeed, Pastor Aden's Proposed Jury Charge on Section 240.20(6) accurately captures this concept: "[I]ndividuals cannot be held responsible under Section 240.20(6) when the 'order to disperse' is

7



based on the acts of others protesting his constitutionally protected speech." Plaintiff's Proposed Jury Charges (ECF 125) at 19.

This concept—the heckler's veto—is an extremely esoteric aspect of constitutional law that even many lawyers do not understand. Indeed, Defendants themselves continue to dispute that it is an accurate statement of the law, Trial Tr. Vol. 3 at 389:4–7, and Defendants' counsel argued in summation that an order of the police that is given for purposes of "public safety" cannot be unlawful, Trial Tr. Vol. 3 at 351:24–352:6; *see also* Trial Tr. Vol. 3 at 353:8–11 ("No First Amendment right of Plaintiff Aden Rusfeldt was violated when he was given a lawful order to disperse from a hazardous situation that he himself instigated."). Because the charge failed to explain that having "an intent to suppress or discriminate against a particular viewpoint" includes taking law-enforcement action against a speaker based on a crowd's hostile reaction to his speech, it gave the misimpression to the jury that Defendants must literally engage in actual viewpoint discrimination to find in his favor on both his Fourth and First Amendment claims. This alone warrants a new trial.

Second, the Court's jury charge on Pastor Aden's First Amendment heckler's veto claim erroneously referred to the concept of "retaliation" throughout. Trial Tr. Vol. 3 at 370:25, 377:8, 378:14, 379:15, 379:23. But Pastor Aden's First Amendment claim was not a retaliation claim— like, for example, when an officer allegedly arrests the plaintiff for referring to the police as "pigs." *See Ballentine v. Tucker*, 28 F.4th 54, 60 (9th Cir. 2022). Instead, Pastor Aden's claim was that Defendants impermissibly took law-enforcement action against him based on a hostile crowd's reaction to his speech—*i.e.*, that Defendants effected a heckler's veto against him. As Pastor Aden's Proposed Jury Charges states, the jury should have been instructed that a plaintiff makes out a First Amendment claim if "other people not associated with the plaintiff engaged in activity in reaction to the plaintiff's First Amendment activity" and "the activity of these other people was motivating factor in defendants' law enforcement action." Plaintiff's Proposed Jury Charges at 13.

Retaliation plays no part in a heckler's veto claim. According to Merriam Webster's dictionary, "retaliate" means "to return like for like—especially: to get revenge." https://www.merriam-webster.com/dictionary/retaliate (last visited July 3, 2025). Similarly, Black's Law Dictionary defines "retaliation" as "the act of doing someone harm in return for actual or perceived injuries or wrongs" and "an instance of reprisal, requital, or revenge." *Retaliation*, BLACK'S LAW DICTIONARY (12th ed. 2024). *Accord United States v. Age*, 136 F.4th 193, 248 (5th Cir. 2025) (noting that "retaliation" implies "revenge"). The use of this word gave the jury the misimpression that officers were required to have some sort of personal animosity against—or desire to punish—Pastor Aden based on his speech to find in his favor. That may be required in a typical First Amendment retaliation case, but it was not required on Pastor Aden's First Amendment heckler's veto theory here. Because the charge erroneously led the jury to believe it was required to make this additional finding to find in Pastor Aden's favor, he is entitled to a new trial on this ground too.

8



Third, the Court's jury charge on Pastor Aden's First Amendment claim erroneously stated that he was required to prove the absence of probable cause. *See* Trial Tr. Vol 3 at 378:22–379:2. While plaintiffs asserting a claim for *retaliatory arrest* are required to prove the absence of probable cause, *Nieves v. Bartlett*, 587 U.S. 391 (2019), again, Pastor Aden is not asserting a retaliation claim. Rather, he is asserting a heckler's veto claim. Accordingly, *Nieves* is not applicable.

Nor does the logic of *Nieves* extend here. As the Supreme Court in *Nieves* reasoned, retaliatory arrest cases against individual officers typically involve "complex" causation problems because (1) they require evaluation of whether the officers had a "retaliatory animus" and (2) the arrestee's "protected speech is often a wholly legitimate consideration for officers when deciding whether to make an arrest." *Id.* at 401 (cleaned up). Thus, in retaliation cases, the lack of probable cause is uniquely probative to the question of whether the officers had a retaliatory motive. *Id.* at 401–02. Causation in heckler's veto cases, by contrast, is straightforward. The plaintiff is not required to prove that any officer had a retaliatory animus, nor is it permissible for officers to base their law-enforcement activity on the content of the plaintiff's speech. Instead, the causation question in heckler's veto cases is whether the police took law-enforcement action against the plaintiff based on the hostile crowd's reaction to his speech. *Bible Believers*, 805 F.3d at 248 (noting that the heckler's veto doctrine prohibits "silencing a speaker *due to* crowd hostility" (emphasis added)). Thus, unlike retaliatory arrest cases, whether independent probable cause exists in heckler's veto cases has no bearing on Defendants' subjective motivation. Moreover, as discussed, the evidence here conclusively establishes that Defendants took law-enforcement action against Pastor Aden based on the actions of the hostile crowd that gathered around him. Accordingly, Pastor Aden was not required to prove the absence of probable cause to prevail.

To be sure, probable cause may still be relevant in a heckler's veto case where the evidence shows that the police took law-enforcement action against the plaintiff based on probable cause not arising out of the hostile crowd's reaction to the plaintiff's speech. In that case, the law-enforcement action would not have been undertaken "due to" the crowd's hostility, *id.*, and, thus, no heckler's veto would have occurred. Here, however, the only offense on which probable cause was charged was Disorderly Conduct – Failure to Disperse, and, as discussed, probable cause did not exist under that statute as a matter of law and, in the alternative, the Court's charge on that statute was unduly confusing. Accordingly, Pastor Aden is also entitled to a new trial on this ground.

Fourth, the Court's jury charge on Pastor Aden's First Amendment heckler's veto claim was erroneously limited to his arrest. Trial Tr. Vol 3. at 377:5–6. Instead, it should also have included Defendant's *threats* to arrest him. While an actual arrest is obviously sufficient to interfere with a plaintiff's First Amendment rights, it is not necessary. Rather, the question is whether the police action would deter a person of "ordinary firmness" from continuing to engage in the protected activity. *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). As numerous courts have held, police officers' orders accompanied by threats to arrest are sufficiently imbued with

9

coercive power to satisfy this standard. *See Nazario v. Gutierrez*, 103 F.4th 213, 237 (4th Cir. 2024) (holding that "the threat of an arrest is likely to deter a person of ordinary firmness from the exercise of First Amendment rights" (cleaned up)); *Turner v. Williams*, 65 F.4th 564, 580 (11th Cir. 2023) ("The threat of arrest is the quintessential . . . conduct that would deter a person of ordinary firmness from exercising First Amendment rights."); *Bible Believers*, 805 F.3d at 261 (noting that "the answer to disagreeable speech is not . . . ratification of the heckler's veto through threat of arrest by the police"); *Jefferson v. Koenig*, No. 15-CV-0544, 2016 WL 8711374, at *6 (E.D.N.Y. Jan. 15, 2016) (concluding that threat to arrest was sufficient to state First Amendment claim); *Griffin-Nolan v. Providence Wash. Ins. Co.*, No. 504CV1453, 2005 WL 1460424, at *9 (N.D.N.Y. June 20, 2005) (same).

Here, a little over an hour into the incident, the NYPD directed Pastor Aden to leave the corner of West 4th Street and Washington Square East or be subject to arrest. Px A3 at 0:02–14. In response to this order, Pastor Aden lowered his sign and began walking down Washington Square East. Px A3 at 0:14–3:43. Because this order was accompanied by a threat to arrest, the Court should have instructed the jury that this order—in addition to Pastor Aden's arrest itself—could have served as a basis for his First Amendment claim. Accordingly, Pastor Aden is entitled to a new trial on this ground as well.

For these reasons, whether considered alone or together, the Court should grant Pastor Aden a new trial in the alternative to entering judgment as a matter of law in his favor.

\* \* \*

Finally, Pastor Aden proposes the following schedule for resolution of his forthcoming Rule 50/59 Motion:

- July 16, 2025 – Pastor Aden files his Motion and Memorandum in Support
- July 30, 2025 – Defendants file their Opposition
- August 11, 2025 – Pastor Aden file his Reply[1]

---

[1] Pastor Aden's proposed Reply deadline is 12 days after Defendants' Opposition rather than the normal 7 days set forth in this Court's local rules. Counsel has a pre-paid family vacation from July 26 until August 3. The proposed Reply deadline will give Pastor Aden's counsel 7 days after returning from vacation to prepare and file the Reply.

10



Thank you for your continued attention to this matter.

Sincerely,

Josh Dixon
*Director of Litigation*
Center for American Liberty

11