UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PASTOR ADEN RUSFELDT,

                Plaintiff,                    22-cv-594 (PKC)

     -against-                       OPINION AND ORDER

CITY OF NEW YORK, NEW YORK;
and STEPHEN HUGHES, in his Individual and
Official Capacity as Assistant Chief of the New
York City Police Department,

                Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        These are the Court's rulings on post-verdict motions by plaintiff Aden Rusfeldt in his action against Stephen Hughes, an assistant Chief in the New York City Police Department ("NYPD"), and the City of New York ("the City"). Rusfeldt claimed that he was wrongfully arrested on June 27, 2021, in violation of his First and Fourth Amendment rights while he engaged in street preaching at PrideFest, an LGBTQ+ festival annually held in Manhattan. Much of the background to this case is laid out in a prior opinion on a motion for summary judgment which the Court need not recount. Rusfeldt v. City of New York, 22-cv-594 (PKC), 2024 WL 4354874 (S.D.N.Y. Sept. 30, 2024). On June 18, 2025, following a three-day trial on liability issues, the jury returned a verdict in favor of Hughes and the City on all claims.

        Presently before the Court is plaintiff's renewed motion for judgment as a matter of law, Rule 50, Fed. R. Civ. P., or, in the alternative, for a new trial, Rule 59, Fed. R. Civ. P. Rusfeldt principally argues that he is entitled to post-verdict relief on his so-called "heckler's veto" claim, the gist of which is that the police may not act based upon a crowd's hostility to a speaker's viewpoint. In his motion, Rusfeldt argues that "This concept—the heckler's veto—is

an extremely esoteric aspect of constitutional law that even many lawyers do not understand." (ECF 166-1 at 22.)

On the evidence presented, both Rusfeldt and the PrideFest attendees were engaging in protected speech. A threat to public safety arose when an apparent PrideFest attendee or attendees threw water bottles or similar objects in the direction of Rusfeldt and three others in his group. The thrower(s) could not be identified because of the size and density of the crowd. The police intervened and formed a cordon to protect Rusfeldt and his small group augmented by a metal barricade. In dealing with two groups of persons congregating with others and acting with the requisite intent under the disorderly conduct statute, a police officer may order either or both groups to disperse provided he acts to promote public order and does not act in an arbitrary manner. While there is no separate "heckler's veto" claim recognized by controlling precedent, a police officer also may not base his actions on viewpoint discrimination, including a crowd's hostility or affection to an individual's protected speech. There is no evidence that any police officer participating in Rusfeldt's arrest did so. A reasonable jury could conclude and did conclude that police officers acted with probable cause to arrest Rusfeldt under N.Y. Penal Law § 240.20(6) when he disobeyed a lawful order to disperse.[1] A reasonable jury on the evidence presented could conclude and did conclude that Rusfeldt failed to prove his First and Fourth Amendment claims and thus his motion for judgment as a matter of law must be denied. The Court also concludes that his motion for a new trial should also be denied because the verdict was not against the weight of the evidence and he has failed to show that any instruction to the jury was erroneous.

---

[1] "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . (6) he congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." N.Y. Penal Law § 240.20(6).

I.     Motion for Judgment as a Matter of Law

A.  Rule 50 Standard

Rule 50(a), Fed. R. Civ. P., provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party," the Court may, upon motion, grant judgment as a matter of law in the movant's favor. "A movant's burden securing Rule 50 relief is particularly heavy after the jury has deliberated in the case and actually returned its verdict." Cross v. New York City Transit Authority, 417 F.3d 241, 248 (2d Cir. 2005). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence," which are functions reserved for the jury. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51 (2000)). "[T]he district court may set aside the verdict only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against [the movant]." Cross, 417 F.3d at 248 (internal quotation marks omitted).

B.  The Facts

Virtually all of the relevant events occurring on June 27, 2021, the day of Rusfeldt's arrest, were captured on video recorded by Rusfeldt's wife. (Tr. 49; Ex. A1, A2, and A3.) On June 27, Rusfeldt went to Washington Square Park in New York City with his wife, his stepson and a friend to preach at PrideFest taking place in the vicinity of the park. (Tr. 44-45, 48.) Once at Washington Square Park, Rusfeldt revealed a shirt he was wearing that read, "Attention Feminists Submit to Jesus" on the front. (Tr. 54-55.) He then unfurled a large banner

that read, "Fags and whores burn in hell. Repent, obey Jesus." (Tr. 55.) He held the banner aloft on a metal pole. (Tr. 55.) After holding up the banner, Rusfeldt said to his small group, "It's about to get crazy." (Tr. 56.) Rusfeldt's friend began to preach with a megaphone against LGBTQ+ ways of life. (Tr. 57.) The activity by Rusfeldt's group attracted the attention of festivalgoers who began to gather near the group. (Tr. 60.)

The festivalgoers taunted and teased Rusfeldt and the three others but no threatening behavior was exhibited. (Id.) There were officers of the NYPD nearby, but none intervened until one or more individuals in the crowd threw objects, appearing to be plastic bottles, in the direction of Rusfeldt's group. (Tr. 61-62.) After this, five officers who had been standing across the street first approached Rusfeldt's group. (Tr. 62, 115.) Officer Nicholas Pounds, who was among the approaching officers, testified that he was unable to identify the bottle-thrower(s). (Tr 176.) The thrower(s) faces are not visible in the video. (Ex. A1 at 16:00-16:28.)

Pounds testified that he and other officers decided to intervene because the crowd was "throwing bottles towards [Rusfeldt] and his group, and they were also blocking traffic." (Tr. 176.) Pounds testified that, "At that point, I believe that the quickest way to deescalate the situation was to move the plaintiff from the location." (Tr. 187.) Pounds testified that he was not motivated by Rusfeldt's message and his only concern was "public safety." (Tr. 188.)

One of the officers then told Rusfeldt to "shut it down" and that there was a risk of someone getting hurt. (Tr. 116-17.) An officer asked Rusfeldt to lower his banner. (Tr. 118.) Rusfeldt declined and asked to speak to a higher-ranking officer. (Id.) Another officer told Rusfeldt that he was causing an unsafe situation and Rusfeldt responded that he understood. (Tr. 120-21.) While the police officers waited for a supervisor, the officers stood as a barrier between

Rusfeldt's group and the crowd. (Tr. 121.) In the video, the officers are seen standing with their backs to Rusfeldt and facing the crowd. (Ex. A1 at 24:16-31:30.)

The supervisor, NYPD Captain Mark Turner, arrived and told Rusfeldt that he had a constitutional right to speak, but the situation had become dangerous. (Tr. 123-24.) Rusfeldt again declined to move. (Tr. 124.) Rusfeldt then told his friend to stand on a stool to continue preaching to the crowd. (Tr. 128.) At some point, more officers gathered and placed a metal barricade between Rusfeldt and the crowd. (Tr. 129.) Rusfeldt directed his wife to create a new sign that read, "Homos are rapists." (Tr. 133-34.) Rusfeldt then yelled the phrase to the large crowd that had gathered. (Tr. 137.) Captain Turner then told Rusfeldt he would have police remove him. (Tr. 69-70.) Rusfeldt again declined to move. (Tr. 70.)

At a later point, NYPD Assistant Chief Hughes arrived. (Tr. 229.) Hughes decided to endeavor to persuade Rusfeldt and his group to disperse in order to diffuse the situation. (Tr. 233.) Hughes testified that he was concerned about the officers' safety and that he was not motivated by his feeling towards either Rusfeldt's or the crowd's messages. (Tr. 235, 268.) Hughes told the jury that he was concerned for the officers because "they had their back to somebody with a six-foot metal pole and they had a crowd in the front." (Tr. 235.)

Hughes instructed Rusfeldt to walk towards Broadway. (Tr. 240.) One of the sergeants, at Hughes' direction, asked Rusfeldt to take the banner off of the pole and to hold it. (Tr. 241.) After much discussion with Rusfeldt, Rusfeldt and the three others began to walk along the street, turned a corner for about twenty feet and refused to move any further. (Tr. 159.) Members of the crowd continued to gather near Rusfeldt and his group. (Tr. 167.) Several officers approached Rusfeldt and told him it was dangerous for him stay on the block and asked him to move a few blocks down. (Tr. 157.) Hughes told Rusfeldt that he was creating an unsafe

situation, endangering the officers who protected him, and that he had a right to speak, but had to move off of the block. (Tr. 160.)

Officer Pounds then gave another directive for Rusfeldt to leave. (Tr. 251.) Hughes told Rusfeldt that he was going to be arrested. (Id.) Rusfeldt testified that he decided he was not going to leave and said to the officers, "Arrest me." (Tr. 156, 159.) Hughes then authorized the officers to arrest Rusfeldt. (Tr. 253.) Rusfeldt was handcuffed, taken into custody and issued a summons for Disorderly Conduct under N.Y. Penal Law § 240.2 (6) & (7) and released. The summons was eventually dismissed against Rusfeldt. (Tr. 77.)

In his trial testimony, Rusfeldt acknowledged that he was given multiple orders to disperse.[2] Rusfeldt challenged the lawfulness of these orders. Defendants rested their defense to Rusfeldt's First and Fourth Amendment claims on the existence of probable cause to arrest Rusfeldt for disorderly conduct, a misdemeanor. After the three-day trial, the jury found that Rusfeldt was not (1) arrested "in violation of a right protected by the Fourth Amendment as defined by the Court" and (2) not "deprived . . . of a right protected by the First Amendment as defined by the Court." (Verdict Form, ECF 163.)

---

[2] In the pre-trial order, the parties' stipulated that "the order issued by NYPD Officer Pounds to Pastor Aden at the beginning of the third video segment, see Video Part 3 (ECF 99-8) at 0:01-15, was an 'order to disperse' under N.Y.P.L. § 240.20(6); and . . . Pastor Aden understood that 'order to disperse' and refused to comply with it because he believed it violated his federal constitutional rights." (Joint Final Trial Report, ECF 135 at 2.)

C. <u>Rusfeldt's Motion for Judgment as a Matter of Law Will Be Denied.</u>

Rusfeldt urges that he is entitled to judgment as a matter of law because he has established all elements of his First Amendment and Fourth Amendment claims. Particularly, Rusfeldt argues that the jury erred because the order to disperse given by officers was not lawful and could not have served as a basis for probable cause.

On the trial evidence, a reasonable jury could conclude that there was probable cause to arrest Rusfeldt for disorderly conduct. Under New York law, a person is guilty of disorderly conduct when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . he congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." N.Y. Penal Law § 240.20(6). "An officer has probable cause to arrest when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" <u>Jaegly v. Couch</u>, 439 F.3d 149, 152 (2d Cir. 2006) (quoting <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996)). There are four elements necessary to establish probable cause for an arrest under section 240.20(6): "the individual (1) congregated with other persons in a public place; (2) was given a lawful order of the police to disperse; (3) refused to comply with that order; and (4) acted with intent to cause or recklessly created a risk of public inconvenience, annoyance, or alarm." <u>Kass v. City of New York</u>, 864 F.3d 200, 211 (2d Cir. 2017).

Probable cause is an absolute defense to a Fourth Amendment false arrest claim. <u>Jaegly</u>, 439 F.3d at 152. "Probable cause is a mixed question of law and fact . . . [q]uestions of historical fact regarding the officers' knowledge at the time of arrest are to be resolved by the jury." <u>Dufort v. City of New York</u>, 874 F.3d 338, 348 (2d Cir. 2017) (internal citations omitted).

The Court gave a complete set of instructions to the jury on probable cause, including when an order is "lawful." The Court put the question of whether the orders were lawful to the jury, instructing them that "[a]n order to disperse is lawful if its purpose is to promote public order and was not issued in a purely arbitrary manner. An order that is motivated by an intent to suppress or discriminate against a particular viewpoint is not a lawful order." (Tr. 375.) The instructions on "lawful" directives were consistent with existing law. See, e.g., Kass, 864 F.3d at 212 (concluding that an order is lawful when the direction was not "arbitrary" and was calculated "to promote the public order") (collecting cases); Meyers v. City of New York, 812 Fed. App'x 11, 14 (2d Cir. 2020) (summary order) (concluding that a dispersal order was lawful when "it was intended to promote several legitimate governmental goals and therefore not arbitrary").

There was ample evidence to support the jury's conclusion that the officers had probable cause to arrest plaintiff. First, Rusfeldt testified and acknowledged that he was given multiple orders to disperse. (Tr. 139, 149.) Rusfeldt testified that he understood these to be orders to disperse but refused. (Tr. 155, 163-64.) Next, the jury heard from Pounds and Hughes. The jury heard that the officers were required to know the elements of various provisions of penal law. (Tr. 191.) Pounds testified that he understood a failure to follow a lawful order or creating a dangerous or hazardous condition would constitute disorderly conduct under New York law. (Tr. 191.) Pounds testified that a hazardous condition had formed, with the crowd throwing bottles and blocking traffic on the road. (Tr. 176.) Hughes testified that he was also concerned for the safety of the officers who were separating Rusfeldt from the crowd. (Tr. 235.) The jury heard both Hughes' and Pounds' testimony that their actions were not motivated by their feelings towards either Rusfeldt's or the crowd's message. (Tr. 188, 268.) On this

evidence, a reasonable jury could conclude that Rusfeldt had failed to prove his Fourth Amendment false arrest claim.

Generally, probable cause also defeats a First Amendment retaliation claim. Nieves v. Bartlett, 587 U.S. 391, 404 (2019). There is a narrow exception under Nieves. Id. Probable cause does not defeat a retaliatory arrest claim when the plaintiff produces "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Gonzalez v. Trevino, 602 U.S. 653, 655 (2024) (citing Nieves, 587 at 407).

The evidence before the jury of possible relevance to the Nieves claim was the lack of an arrest of a person or persons who threw objects, apparently water bottles, in the direction of Rusfeldt and the three other persons with him at the June 27 event. A reasonable jury, however, could conclude that the person or persons throwing the objects were not similarly situated because the presence of a large number of LBGTQ+ festivalgoers in close density did not permit officers of the NYPD to identify the bottle thrower(s), thereby depriving officers of the ability to make a lawful arrest. There was also evidence that a Pride Fest attendee held aloft a pole with a banner or flag and was not arrested. (Tr. 66.) Hughes testified, however, that participants in a parade or event for which a permit is issued, including Pride Fest, are permitted to have poles with banners or flags. (Tr. 272.) This testimony was unrebutted. A reasonable jury could conclude that a person participating in a permitted event was not similarly situated to Rusfeldt. Thus, a reasonable jury could conclude that Rusfeldt had failed to prove his First Amendment claim.

Rusfeldt also moves for judgment as a matter of law to his Equal Protection Claim, but his claim was dismissed before trial on defendants' summary judgment motion. See

Rusfeldt, 2024 WL 4354874, at *15-16. As this claim had already been dismissed, his motion for judgment as a matter of law on all claims will be denied.

II. Motion for a New Trial.

A. Rule 59 Standard.

"A court may grant a new trial 'for any reason for which a new trial has heretofore been granted in an action at law in federal court,' including if the verdict is against the weight of the evidence." Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 417 (2d Cir. 2012) (quoting Fed. R. Civ. P. 59(a)(1)(A)). For the purposes of a Rule 59 motion, "a decision is against the weight of the evidence . . . if and only if the verdict is seriously erroneous or a miscarriage of justice." Farrior v. Waterford Board of Education, 277 F.3d 633, 635 (2d Cir. 2002).

"On new trial motions, the trial judge may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner." Raedle, 670 F.3d at 418. However, the Court should "should rarely disturb a jury's evaluation of a witness's credibility . . . and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." Id. (internal citations and quotation marks omitted).

"An erroneous jury instruction requires a new trial, unless the error is harmless." Velez v. City of New York, 730 F.3d 128, 134 (2d Cir. 2013). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Anderson v. Branen, 17 F.3d 552, 556 (2d Cir. 1994). When determining whether a jury charge is erroneous, must consider if the instructions "taken as a whole and viewed in light of the evidence, show no tendency to confuse or mislead the jury as to principles of law which are applicable." Hathaway v. Coughlin, 99 F.3d 550, 552-53 (2d Cir. 1996)).

B. The Jury's Verdict Was Not "Seriously Erroneous" or a "Miscarriage of Justice."

Rusfeldt asserts that the verdict was against the weight of the evidence. He argues that the evidence shows that defendants took law-enforcement action against Rusfeldt because of the actions of the crowd, not because of Rusfeldt's own actions.

The Court has reviewed the evidence and there is nothing that would support a claim that the jury's verdict was erroneous. The jury heard the testimony of the witnesses, assessed their credibility, resolved any inconsistencies, and contemplated the relative weight of the evidence. The weight of the evidence supports the jury's conclusion that the officers had probable cause to arrest Rusfeldt for failure to comply with a lawful order to disperse. Further, Rusfeldt did not present objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been. The jury's finding that Rusfeldt had not proven his First and Fourth Amendment claims was consistent with the greater weight of the evidence.

C. The Jury Instructions Were Not Erroneous.

Rusfeldt asserts that several of the Court's instructions were erroneous. First, he claims that the Court erroneously assigned the burden of proof on probable cause to him on the First Amendment claim. While the Court instructed the jury that the burden of proving probable cause on the Fourth Amendment false arrest claim was on the defendants, it explained that the burden of proof on probable cause on the First Amendment claim was on the plaintiff.

There was good reason for instructing the jury on the different burden between the Fourth Amendment and First Amendment claims: the holding in Nieves requires a plaintiff alleging that he was arrested in retaliation for the exercise of his First Amendment rights to prove the absence of probable cause. 587 U.S. at 402 ("The plaintiff pressing a retaliatory arrest claim

must plead and prove the absence of probable cause for the arrest."). No objection was made to the proposed instruction that was given to Rusfeldt's lawyer in draft form in a timely fashion. (Court Ex. 4, Tr. 312-23.) Under Rule 51, Fed. R. Civ. P., a party who wishes to object to a Court's jury instruction "must do so on the record, stating distinctly the matter objected and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). In order to later challenge a jury instruction, "a party must object [to the instructions] before the jury retires to deliberate." Jarvis v. Ford Motor Co., 283 F.3d 33, 56 (2d Cir. 2002). Therefore, "[f]ailure to object to a jury instruction . . . prior to the jury retiring results in a waiver of that objection." Lavoie v. Pacific Press & Shear Co., 975 F.2d 48, 55 (2d Cir. 1992). Rusfeldt had a full and fair opportunity to object to the jury instructions. The Court provided all parties with a copy and reviewed it with the parties. Accordingly, this objection that Rusfeldt now raises for the first time is deemed waived and, in any event, is without merit.

Rusfeldt also argues challenges the Court's instruction to the jury that "[a]n order that is motivated by an intent to suppress or discriminate against a particular viewpoint is not a lawful order." (Tr. 375.) Rusfeldt had previously raised this objection after the jury instructions had been read to the jury. (Tr. 388.) According to Rusfeldt, "[w]hile this charge was technically not incorrect, it was incomplete and confusing insofar as it did not specify that a dispersal order is necessarily motivated by an intent to suppress or discriminate against a particular viewpoint if it was motivated by officers' desire to restore public safety that was disturbed by a crowd's hostile reaction to the plaintiff's speech." (ECF 166-1 at 21-22.) The instruction given by the Court was plain and clear and consistent with precedent:

> An order to disperse is lawful if its purpose is to promote public order and was not issued in a purely arbitrary manner. An order that is motivated by an intent to suppress or discriminate against a particular viewpoint is not a lawful order.

(Tr. 375.) An order to disperse is lawful unless "the order was 'purely arbitrary' and 'not calculated in any way to promote the public order.'" Crenshaw v. City of Mount Vernon, 372 Fed. App'x. 202, 206 (2d Cir.2010) (summary order) (quoting People v. Galpern, 258 N.Y. 279, 284-85 (1932)). The addition of the phrase that an order to disperse motivated by an intent to discriminate against a viewpoint is not lawful is, as Rusfeldt concedes, "technically not incorrect" and is an example of an order that is "purely arbitrary." Despite the objection of defendants, he was permitted to use his preferred phrase "heckler's veto" in questioning and in argument. (Final Pre-Trial Conference, Tr. 20-22 (ECF 149).)

Rusfeldt also objects to his First Amendment claim being characterized as "retaliation" claim in the jury instructions and his objection was made in a timely manner. (Tr. 312-13.) The use of the term is appropriate and used repeatedly in Nieves and many other cases. 587 U.S at 396-407. Even at that, the claim was described in the instructions without reference to retaliation: "Plaintiff Rusfeldt asserts that his right to free speech under the First Amendment was violated on June 27, 2021, by the conduct of defendant Hughes or another officer of NYPD." (Tr. 376.) In a similar vein, the verdict form asked: "Has Aden Rusfeldt proven by a preponderance of the evidence that the following person or persons, on June 27, 2021, deprived him of a right protected by the First Amendment as defined by the Court?" (ECF 163.) Rusfeldt was not barred from arguing to the jury that basing a decision to issue an order of dispersal on a crowd's reaction to protected speech was a form of viewpoint discrimination.

Rusfeldt's apparent intent in avoiding the use of the word "retaliation" is to avoid the holding of Nieves. The fundamental holding of Nieves is that probable cause defeats a claim of retaliation for protected speech, except for the "narrow qualification" "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to

do so." Nieves, 587 U.S. at 406. Police action that is motivated by the crowd's reaction to Rusfeldt's speech is police action in retaliation for Rusfeldt's speech.

Finally, Rusfeldt's argues that the Court should have instructed the jury that the officers' threats to arrest him and not merely the ultimate arrest could form the basis for liability, which he also raised when the Court reviewed the instructions with the parties. (ECF 166-1 at 24; Tr. 314.) Under his conception, multiple police warnings in the form of threats of arrests occurring within minutes of each other that culminate in an arrest are separate claims. As the Court previously explained, "the injury which plaintiff alleges flows from the fact of the arrest . . . ." (Tr. 317.) The evidence presented at trial is fairly viewed as a single course of conduct.

The Court finds no merit in Rusfeldt's other arguments that he is entitled to a new trial.

CONCLUSION

For the reasons stated above, plaintiff's motion for a judgment as a matter of law or, alternatively, for a new trial is DENIED. The Clerk of Court is directed to terminate the motion. (ECF 166.) The Clerk is respectfully requested to enter judgment for defendants Hughes and the City of New York and close the case.

SO ORDERED.

                                                       P. Kevin Castel
                                     United States District Judge

Dated: New York, New York
      October 2, 2025